COPPER HILL MINING COMPANY *v.* JAMES SPENCER, ROBERT EPERSON, EUSTACE PARKER, HENRY ATWOOD, L. LUCE, HENRY LUCE, AND WILLIAM WHETTSTONE. (No. 2.)

MINING CLAIMS—VERBAL SALE OF.—The rule allowing mining claims to be transferred by a verbal sale and delivery of possession, only applies to cases where the grantor is in actual possession and can deliver possession to the grantee ; and does not extend to cases where at the time of the sale the claim is in the adverse possession of third parties. In such cases, there must be a written conveyance to pass the title.

*Table Mountain Tunnel Company* v. *Stranahan*, 20 Cal. 198, commented on.

APPEAL from the District Court, Sixteenth Judicial District, Calaveras County.

The facts are stated in the opinion of the Court.

*M. G. Cobb*, for Appellants.

Appellants claim that, under the decisions of the Supreme Court in *English* v. *Johnson*, 17 Cal. 107, *Atwood* v. *Fricott*, 17 Cal. 43, *Table Mountain Tunnel Company* v. *Stranahan*, 20 Cal. 199, that going upon a mining claim, posting up written notices thereon at each end of the claim showing the extent of their ground and indicative of their intention to work, and actually working upon a part of their claim—provided all this is conformable to mining customs—*is a possession of the claim* as full and effectual as though the claim were surrounded by a fence ; that such a possession under the same decisions can be transferred without any instrument of writing, to be held in precisely the same way by the grantee or transferree.

Under the decisions the appellants fail to see what particular efficacy there might have been in a deed over the parol

transfer or surrender of possession in this case.   The rule of law undoubtedly is that where an entry on land is made, *under color of title by deed*, the possession is deemed to extend to the bounds of the deed, although the actual settlement and improvements are only on a small part of the tract.   In such cases the law construes the entry to be co-extensive with the grant of the party, on the ground that *it is his clear intention to assert such possession.   (Ellicott* v. *Pearl*, 10 Peters, 412.)

The Court, in *Ellicott* v. *Pearl*, 10 Peters, 441, Justice Story, says : " The assumption that there can be no possession *to defeat an adverse title* except in one or other of these ways— that is, by an actual residence or an actual inclosure—is a doctrine wholly irreconcilable with principle and authority. Nothing can be more clear than that a fence is not indispensable to constitute possession of a tract of land.   The erection of a fence is nothing more than an act presumptive of an intention to assert an ownership and possession over the property.   But there are many other acts which are equally evincive of such an intention of asserting such ownership and possession—such as entering upon land and making improvements thereon, raising crops thereon, felling and selling trees thereon, etc., under color of title."

In *Barr* v. *Gratz*, 4 Wheat. 223, the same Court, Justice Story, says : " Where two persons are in possession of land at the same time under different titles, the law adjudges him to have the seizin of the estate who has the older and better title."

In the case at bar the older and better title was in the plaintiffs, derived by them from the original locators, who located on the 29th of May, 1861.

Appellants understand the established doctrine of this Court now to be, that an entry on a mining claim under color of title by putting up notices or erecting metes or bounds, or by doing both, carries with it the possession of the whole claim to the extent claimed by the notices or defined by the metes and bounds erected, although the *actual possession* and

improvements are only on a small part of the claim, or even not on the claim at all, but in proximity thereto.

If plaintiffs' grantors or vendors could locate a claim and hold it by posting notices, under the mining customs of the country, and if their claim as thus located could pass to plaintiffs by a *transfer of possession merely*—that is, such possession as they had under their notices—it then makes no difference whether the defendants entered before or after the transfer to plaintiffs, or whether they were claiming to occupy adversely or otherwise.

The entry of defendants does not come within the rule as laid down in *Ellicott* v. *Pearl*, and cases there cited, and any claim or act on the part of defendants under such an entry could not constitute an adverse possession.

The defendants' entry was upon the plaintiffs' grantors' possession, as said before, as much so as if plaintiffs' mining claim had been surrounded by a fence; and no claim or subsequent act on defendants' part can or could exalt their occupancy into anything but a naked trespass.

The plaintiffs had a right to consider the entry and acts of defendants as amounting to an ouster, and they had the right to elect the point of time at which this ouster should take place.

They have fixed it in their complaint as being on the 1st of July, 1861, four days after the transfer of possession to them.

Ouster by election is created by acts, without actual force, and in themselves equivocal and not necessarily amounting to an entire and immediate ouster of the freehold, but which the owner may, if he pleases, treat as usurpations of his freehold for the sake of vindicating his title by an action at law.

In such cases, the act of entry being equivocal, and being either a trespass or a disseizin, according to the intent, the law will not permit the wrongdoer to qualify his own wrong, and explain it to be a mere trespass, unless the owner elects so to consider it. (*Prescott* v. *Nevers*, 4 Mason, 326; *Ricard* v. *Williams*, 7 Wheat. 60; *Robison* v. *Swett*, 3 Green. 316; *Allen* v. *Holten*, 20 Pick. 458.)

*George Cadwalader*, for Respondent.

The question reduced to its true import : Is a parol sale of
a copper mineral ledge, unattended or followed by the transfer
of possession, valid ?

This proposition the appellant must sustain in this Court,
for the surrender by the locator, and the receipt of stock,
can hardly amount to anything more or less than a purchase
by the plaintiff of mining ground for shares in its capital
stock.

The locator says : " I have one hundred feet in the Copper
Hill Claim, which I will surrender to you for one hundred
shares of your stock." The stock is delivered, and the trans-
action is done. This *formula* appellant is obliged to urge is
the legal equivalent of a conveyance of a bill of sale or a
transfer of the actual possession from seller to buyer.

The decisions of this Court, through twelve volumes, were
to the effect that mining claims in this State were real estate
or in the nature thereof, and that to pass title thereto it either
required a deed, a bill of sale, or some memorandum in
writing. (*McCarron* v. *O'Connell*, 7 Cal. 153 ; *Merced Min-
ing Company* v. *Fremont*, 7 Cal. 319 ; *McKeon* v. *Bisbee*, 9
Cal. 142 ; *Clark* v. *McElroy*, 11 Cal. 160 ; *Watts* v. *White*,
13 Cal. 324 ; *Merritt* v. *Judd*, 14 Cal. 64 ; *Boggs* v. *Merced
Mining Company*, 14 Cal. 374.)

Then followed the decision of this Court in the case of
*Table Mountain Company* v. *Stranahan*, 20 Cal, 198, holding
for the first time that the right of a miner in his claim was of
such a nature that it might be parted with without a deed,
bill of sale, or memorandum in writing, *and by a transfer of
the actual possession thereof from seller to buyer*. This was the
extent of the rule laid down.

When it said that rights resting in possession might be sold
by a transfer of that possession, and that the transfer of that
possession would be evidence of a sale, and equally efficacious
as a conveyance, it surely did not contemplate the converse
of the rule being true—that a right to a piece of mining

ground not in possession might be sold or transferred by mere words. The transfer of possession imports some physical acts; the seller at the time must be in possession, he must give it up, and the buyer must take it. This done, the buyer becomes invested with the possessory right of the seller as fully as if a deed had been executed and delivered. The main question then is, What is evidence of the sale of a mining claim? because it is a question of evidence. We assert that there are only three ways in which such a sale can be proved:

1. By deed (which is the best way.)

2. By bill of sale.

3. By a transfer of the actual possession from seller to buyer.

Adverse counsel insists, however, there is a fourth mode, which is not by deed, nor by a bill of sale, nor by a transfer of possession, but by oral communication between seller and buyer, accompanied by the receipt of the consideration, and that the interests of the different parties in the claim in dispute passed to the plaintiff upon its stock issue to them.

It is scarcely conceivable that such a mode of conveyance of a copper ledge or a piece of mining ground can meet the sanction of this Court. Certain it is, that no decisions have at any time been made by this tribunal supporting such a doctrine, but all thereof are at war with it. A mining claim, whether real estate or not, approximates so nearly thereto as to draw to its government all the familiar rules of evidence relating to realty. Their possession is recovered in the action of ejectment; mortgages affect them in the same manner as they do real estate. Inherently they are valuable estates in law; to say that an oral sale thereof, when in the adverse possession of third parties, is valid, is to advance a doctrine that is dangerously false.

But the Court cannot fail to observe that the facts show that the defendants were in possession of the six hundred feet of ground before the plaintiff was created or acquired any interest or right in any part of the ground. Had the plaintiff

entered under a paper title, conveying to it the entire claim, its possession would not have embraced the ground in our possession at that time. (*Gunn* v. *Bates*, 6 Cal. 263.)

The rule is thus stated by Judge Story in *Ellicott* v. *Pearl*, 10 Peters, 412, who says: " The entry into possession of a tract of land under a deed containing metes and bounds, gives a constructive possession of the whole tract *if not in any adverse possession*, although there may be no fence or inclosure round the ambit of the tract, and an actual residence only on part of it."

And here we may observe with great propriety that the entry of the plaintiff on the 26th day of June, 1861, with the oral consent of the locators, did not give the plaintiff a greater possessory right than if it had entered under a conveyance from the same parties.    The doctrine, however, of *Ellicot* v. *Pearl* and *Gunn* v. *Bates*, is expressly limited to cases where parties enter under a paper title, and there would seem to be no such thing as a constructive possession of ground given by mere words, and hence it follows that whatever possession the plaintiff got from the locators could not and did not embrace the land in the possession of the defendants; and thus the Court will see that in whatever aspect the case of plaintiff is viewed, there is still the incurable defect, the broken link in the chain of title, or a failure to show an interest in the subject matter of the action.

By the Court, SAWYER, J.

This is an appeal from a judgment of nonsuit and the order denying a new trial.    The suit was brought to recover six hundred feet of mining ground.    The evidence of the plaintiff shows that a party of miners, on or about the 1st of June, 1861, located, in the usual mode, three thousand feet or more in length on a copper ledge, and commenced the work of developing the mine ; that from the 7th to the 10th of June— certainly as early as the 10th—the defendants also located, by putting up notices and immediately commencing work upon

it, that portion of the same lode now in controversy, and that they have ever since been in possession, claiming it under said location; that on the 26th of the same month the locators first named and their assigns, in pursuance of the statutes of California, organized themselves into a corporation under the name of the Copper Hill Mining Company, the present plaintiff; that the said parties then, to use their own phrase, " surrendered their claim to the corporation," and took stock in lieu of it. The language of all the witnesses on this point is nearly identical, and the following testimony of Mr. Brown will serve to express in the language of the witnesses all that was said in regard to the transfer of the title to the plaintiff: " I surrendered all my interests and those I was representing in and to said claim to corporation, Copper Hill Mining Company, plaintiff, and took certificates of stock in lieu. There were no deeds of this claim made to the corporation by any of the owners." The following is also stated in the records as an admission by plaintiff: " Plaintiff here admitted that no deeds or conveyances in writing were made to the corporation by any of the owners or holders of said mining claim; that all rights, claim, and possession of, in, and to said mining ground, whatever the same might be, are surrendered and given up to the company and merged in said corporation, such owners receiving from corporation certificates of stock according to the amount so surrendered." The foregoing facts and testimony, together with subsequent work and other acts of possession and ownership, on behalf of the corporation, on portions of the claim outside of the ground in dispute, constitute the evidence of title upon which plaintiff relied for a recovery.

The appellant claims that under the decision in *Table Mountain Tunnel Company* v. *Stranahan*, 20 Cal. 198, the evidence establishes a title sufficient to authorize a recovery. We think the principle announced in that case not applicable to the one under consideration. In the former case, the corporation had acquired the possession of the locators to the entire claim, and the defendants subsequently entered upon

the possession of the corporation. In the present instance, the defendants entered into the adverse possession of the disputed ground before the corporation was formed, and they were in such adverse possession at the time of the organization of the corporation and the so-called " surrender" of the claims to the plaintiff, and the acceptance of the stock in lieu thereof by the locators. The corporation did not succeed to *the possession of* the locators in that part of the lode in dispute, for the reason that it was then and it has ever since been in the adverse possession of the defendants. The entry of the plaintiff upon such portion of its grantors' claims as was at that time in the possession of such grantors, did not draw after it the possession of that portion of their original claim which was then in the adverse possession of the defendants. The locators could only surrender such possession as they had, and that, as shown by the plaintiff's own evidence, did not, at the time of the surrender, or at any subsequent time, extend to the mining ground in dispute. The *possession of* the ground in controversy having never been transferred to the plaintiff, it was necessary to show that the plaintiff had acquired *the title* of the locators under whom it claimed. The witnesses, with singular uniformity of expression, use the loose language : I " surrendered" my " claim" or " interest," " and received certificates of stock in lieu." They do not state what acts they performed which they regarded as constituting the " surrender." It is manifest, however, that these parties, like many others in like cases, were at the time of the transaction acting under the erroneous impression that because they constituted the stockholders of the new corporation, they were, therefore, as to this mining enterprise, identical with the corporation itself, and that their title to the mining claims vested in the plaintiff by virtue of the act organizing themselves into a corporation for the purpose of working the mine. By that act alone, they only created an ideal being capable of receiving a conveyance of their respective interests in the mine. It did not invest the corporation with the title to those interests. In all probability there was

no formal attempt or agreement to transfer the title. But place the facts appearing in the evidence in the light most favorable to the plaintiffs, and the most that can be claimed for them is, that in consideration of the receipt of the certificates of stock, there was an agreement and attempt to make an oral, verbal transfer to the plaintiffs of the respective interests of the locators in the mining ground at the time in the adverse possession of the defendants. We think that such a transfer is insufficient to pass the title. Under such circumstances a written instrument is necessary.

The appellant insists that the question as to the adverse possession of the defendants should have been submitted to the jury. The plaintiff's testimony clearly shows that the possession was adverse. The motion for nonsuit was made upon the close of plaintiff's testimony. It was not necessary to submit the question to the jury.

Judgment affirmed.