Table Mountain Tunnel Co. *v.* Stranahan.

---

## TABLE MOUNTAIN TUNNEL CO. *v.* STRANAHAN *et al.*

A WRITTEN conveyance is not necessary to the transfer of a mining claim.

The right to mining ground, acquired by appropriation, rests upon possession only; and rights of this character, not amounting to an interest in the land, are not within the statute of frauds, and no conveyance other than a transfer of possession is necessary to pass them.

Thus, where the owners of a mining claim, previously located by themselves and others, became incorporated, and placed the corporation thus formed in possession of the claim as their successor in interest, with the evident intention that whatever rights the unincorporated individuals had should pass to the corporation : *Held*, that the title to the claim passed to the corporation as effectually as it would if the transfer had been accompanied by a conveyance in writing.

Possession of mining ground, acquired by an entry under a claim for mining purposes, upon a tract the bounds of which are distinctly defined by physical marks, accompanied with actual occupancy of a part of the tract, is sufficient to enable the possessor to maintain ejectment for the entire claim, although such acts of appropriation are not done in accordance with any local mining rule.

*English* v. *Johnson* (17 Cal. 107) affirmed.

The exclusion, therefore, of evidence tending to prove a possession of this character, is error.

Although mining ground may be located in the absence of local regulations, yet the extent of such location is not without limit. The quantity taken must be reasonable; and whether it be so or not will be determined in such cases by the general usages and customs prevailing upon the subject. If an unreasonable quantity be included within the boundaries, the location will not be effectual for any purpose, and possession under it will only extend to the ground actually occupied.

Upon the question of reasonableness of the extent of a mining location, a general custom, whether existing anterior to the location or not, may be given in evidence; but a local rule stands upon a different footing, and cannot be introduced to affect the validity of a claim acquired previous to its establishment.

APPEAL from the Fifth Judicial District.

Ejectment to recover nine hundred and twenty-six feet of an underground channel claimed by plaintiffs. The possession of the ground by defendants is admitted by the pleadings.

In June, 1852, a mining association, called the "Experimental Company," or "Allen Oliver & Co.," commenced a tunnel for the purpose of piercing an old subterranean channel in Table Mountain, (then first discovered) containing gold. This company consisted, originally, (in May, 1852) of Allen Oliver, John Oliver, J. Stanfield, S. Stanfield, R. Darling and J. D. Lyon.

In June, 1855, the two Olivers and Lyon placed the following notice near the mouth of the tunnel:

"Notice is hereby given that the Experimental Tunnel Company claim this channel, with all its dips and angles, through Table Mountain, in a westerly or northerly direction, with the right to tunnel and work the same from this gulch or the next gulch to the westward, or from both, if found necessary.

(Signed.) "ALLEN OLIVER & Co."

It does not appear that J. Stanfield, S. Stanfield or R. Darling ever worked upon the claim, or did anything to it whatever. In May, 1852, their names were used as members of the company. In June, 1852, the foregoing notice was placed up, and the tunnel was continuously worked by Daniel Oliver, John Oliver and J. D. Lyon, towards the channel of the mountain, until the second day of May, 1854.

In 1853 the bounds of this claim were run off and designated by

blazed trees. This was the same claim as that worked by Oliver & Co. in 1852. A subsequent survey was made, by two witnesses, of this claim in 1857. These witnesses testify that they found the old blazes of the former survey on the trees.

In 1854, May 2d, Daniel Oliver, John Oliver and J. D. Lyon, in conjunction with eleven others, formed themselves into a corporation (the present plaintiff) for the more advantageous working of the claim, Allen Oliver becoming president, J. D. Lyon, secretary, and John Oliver one of the trustees.

The record of incorporation, filed May 2d, 1854, thus states the purposes of the incorporation :

" That the operations of said company shall be confined to the prosecution and completion of the tunnel heretofore known as the Experimental Tunnel, which said work was commenced on or about the first day of June, 1852, and is situated in township number three, county and State aforesaid."

The notice of the old Experimental Company was also taken down, and the following inserted in lieu thereof :

" CLAIM OF TABLE MOUNTAIN TUNNEL COMPANY.

" This claim comprises the claim held and occupied by the Experimental Company since its location, on June 12th, 1852, up to this date, and is situated near Jamestown, Tuolumne county, California ; said claim commences about one hundred and ten feet west from the entrance of the upper tunnel of said company, and comprises the channel there existing, from this point, with its dips and angles, through Table Mountain ; said channel having been heretofore unworkable on account of water, as was proven by many fruitless efforts made previous to the location of said claim.

"ALLEN OLIVER, President.

" J. D. LYON, Secretary.

" May 2d, 1854."

The claim was also surveyed by the County Surveyor in 1861, from the old landmarks, and a map of it produced in Court.

In 1855, January 9th, the miners of Table Mountain passed a code of laws, providing, among other matters, that a claim for each man should not exceed three hundred feet in width at the base of

Table Mountain Tunnel Co. *v.* Stranahan.

the mountain; that no person should hold more than one claim by location; that the bounds of claims should be established and defined by permanent erections of wood or stone at each corner, and a notice at each end, and should be recorded; that " companies having already located and worked upon their claims shall have one week to establish their boundaries according to the above provisions; and in the last section that " the foregoing mining rules and regulations shall not be so construed as to conflict in any way with any claims already located and worked upon."

The length of plaintiff's claim along the mountain, as fixed by the blazing of trees in 1853, and the subsequent surveys, was something over 4,000 feet.

Since the incorporation, plaintiff has been continuously at work driving the original tunnel, and working the channel, but it does not appear that it has complied with the local mining laws passed in 1855, in respect to marking boundaries and recording.

On the tenth of January, 1855, (the day after the passage of the miners' rules) the defendants located a claim on the mountain in accordance with the mining rules, their boundaries embracing some 2,000 feet in length of the ground claimed by plaintiff, and defendants have since been engaged in running a tunnel into their claim, and after striking the channel, in working the same. At the time the action was commenced, the tunnel of defendants extended into the claims of plaintiff nine hundred and twenty-six feet.

The plaintiff having proved the facts in reference to its title, substantially as above stated, but having shown no conveyance to itself from the Experimental Company, or any of the original locators, rested, and defendants moved the Court to strike out " all testimony given by plaintiffs of any acts of ownership or possession of the ground or claim in dispute, on the part of any members of the Experimental Company, or any members of the plaintiff corporation, prior to the date of incorporation, on the ground that no conveyance had been shown to the corporation from the Experimental Company, or from such members, of the claim or right of possession of the latter."

The Court granted the motion, to which plaintiff excepted.    The Court also at the request of defendants instructed the jury as follows:

14

Table Mountain Tunnel Co. v. Stranahan.

"The jury are instructed to disregard all testimony given on the trial in relation to the acts of the Olivers, or of the Experimental Company, or any other company or person, in connection with the claim of the Table Mountain Company, all such testimony having been ruled out by the Court.

"The Table Mountain Tunnel Company can only claim title through their own acts, unconnected with the rights or acts of any former claimant of the same ground, and the jury are instructed to disregard all evidence given by the plaintiffs in support of their claim, of acts done prior to the second of May, 1854. Whatever rights plaintiffs may have must have accrued since that date."

The Wallaville laws, referred to in the opinion, were a set of rules established by the miners in the vicinity of Table Mountain, in 1851, and amended in 1853, regulating the location and holding of ravine and surface diggings. These rules were offered in evidence by the defendants, and admitted under plaintiffs' objection.

The jury returned a verdict for defendants, and a motion for new trial having been made and denied, from this order, and also from the judgment, plaintiffs appeal.

*H. P. Barber*, for Appellants.

Ejectment is a possessory action. "With us the judgment is conclusive of only two points—the right of possession in the plaintiffs, and the occupation of the defendant at the institution of the suit." (*Yount* v. *Howell*, 14 Cal. 468.)

The mere fact of the owners forming themselves into a corporation, could not deprive them of all the evidences of possession, arising from posting notices, marking bounds, and the continuous labor of two prior years, nor could the change of name from Allen Oliver, John Oliver and J. D. Lyons, to "The Table Mountain Tunnel Company," produce this singular effect.

The incorporation had taken place some seven years before suit was brought, and had the slightest necessity existed for a paper title, the Court, in analogy to the barring of suits by limitation, would have presumed a grant or license from the original proprietors to the corporation. (Angel on Water Courses, sec. 203 ; Angell & Ames on Corp., sec. 252 ; *Smith* v. *Main B. T. Co.*, 18 Cal. 111.)

On the other hand, if our possession were adverse to the proprietors, it had been continued seven years, and of course all recovery against us in their favor was barred by limitation.

If the two Stanfields and Darling (formerly belonging to the Experimental Company) still retained their shares, and had not relinquished them to the corporation, then they held as tenants in common with the corporation, and the possession of one tenant in common is the possession of all. ( *Waring* v. *Crow*, 11 Cal. 366 ; *Pico* v. *Columbet*, 12 Cal. 414.)

Viewing the case in this light, then, and that the Stanfields and Darling still retained their interest as individuals, the only possible defect in the proceedings would be, that in suing without them, there was a nonjoinder of parties plaintiff not apparent on the record, which must be taken advantage of by answer, or it is deemed waived. (Practice Act, secs. 44–5.)

It is, we believe, the first time in legal proceedings that the claims of a party in possession of a piece of ground, evidently at any rate with the express assent of one-half the original proprietors, has been postponed to that of a mere stranger, an intruder, who does not in any manner connect himself with the ownership or title of any one of the original proprietors.

By referring to dates, the Court will observe, in connection with the charges given by the Court, the unjust effect of this most extraordinary ruling.

In 1853 the Experimental Company marked out its boundaries. In 1854 plaintiffs entered as a corporation, stating in their act of incorporation and notice that their sole object was to work the tunnel and claim of the old Experimental Company. In 1855 defendants marked out the bounds of their claim. Plaintiffs did not again mark the bounds of their claim till 1857.

Now, as the Court struck out all evidence of any act of possession by any of the parties through whom we claimed prior to the date of our incorporation, (May 2d, 1854) of course all evidence of labor, and all marking of boundaries, antecedent to 1854, was stricken out. Our only actual marking of bounds prior to 1854 was in 1853, and of course this was stricken out, leaving us without any boundaries. Our next survey after entering as a corporatian

was in 1857. Defendants proved a marking of bounds on their part in 1855. And as we had had our evidence of boundaries in 1853 stricken out, and had not re-marked them till 1857, of course, under the ruling of the Court, our very boundary lines dated only from 1857, and thus defendants' marking of boundaries in 1855 was made superior to ours in 1853.

On the same principle, if A, B and .C owned a field inclosed by a fence, and formed themselves afterwards into a corporation, before they could derive any advantage from the fence as a boundary, they would have to tear it down, and build a new one, so as to make it the act of the corporation.

How the Court would have decided in case of a mine or hole in the ground, it is difficult to say.

And yet the fence in the one case and the sides of the hole in the other, would only be evidence of acts constituting an intention to possess. (*Ellicott* v. *Pearl*, 10 Peters, 412.)

The Court evidently proceeded on the ground that no acts done by prior parties could be invoked by the corporation without showing an actual transfer, even as against an intruder; forgetting that ejectment is a possessory action, and that he who enters into a mining claim, defined by metes and bounds, and posts notices indicative of his intention to work the same, becomes just as much possessed of the land within those boundaries, for mining purposes, as though it were surrounded with a fence. It is the usual and ordinary mode of becoming possessed of land for mining purposes, and as such, has a legal common law recognition. (*English* v. *Johnson*, 17 Cal. 107.)

*Caleb Dorsey*, for Respondents.

The action of the Court in excluding plaintiffs' testimony was proper. Plaintiffs first proved that in 1852 the Oliver company took up a claim on Table Mountain; that afterwards the Experimental Tunnel Company took possession of the same claim. The extent of that claim was indefinite and uncertain, being defined by no metes and bounds. In 1854 plaintiffs became incorporated, and pretend to have taken possession of the same claim, which is also indefinite, as appears from their notice.

The plaintiffs show no transfer of possession nor conveyance to them from the Experimental Tunnel Company, or the Oliver company; and as there is no evidence of their having derived title through any prior owners, the Court decided correctly in striking out all the testimony which had previously been given relative to the acts, declarations and possession of the Experimental Tunnel Company prior to the incorporation of plaintiffs.    In order that the acts and declarations of the prior owners relative to the ground in dispute should be evidence for plaintiffs, as to the extent of their possession, it is indispensable for them to show that they derived their title from such prior owners, which they failed to do.    It was no error, then, for the Court to strike out the testimony.    For the same reasons, we contend that it was no error for the Court to charge the jury not to take into consideration any evidence which had been given relative to the acts, declarations or possession of the Oliver company or Experimental Tunnel Company, in relation to the disputed ground, which took place prior to plaintiffs' incorporation.

*A. P. Crittenden,* also for Respondents.

The plaintiffs had no actual possession of anything but the tunnel.    Had they any constructive possession ?    There is no way by which such possession could be acquired other than by their own acts in marking out the boundaries of their claim, in accordance with some mining regulation, or by holding some conveyance, lease or other instrument made by a party professing to have right, and defining the limits of the claim.    (*Hicks* v. *Bell*, 3 Cal. 224 ; *Attwood* v. *Fricot*, 17 Id. 42 ; *English* v. *Johnson*, Id. 109.)

The mere incorporation of the plaintiffs, of course, created no right of property.    It created a new being, distinct from the individuals who composed it, and capable of acquiring and holding property.    When thus created, it could only acquire rights of property in the same mode as an individual.    (Grant on Corporations, 1–4.)

Nor did any right of property, vested in any of the individual members, pass to or become vested in the company by its incorporation, or by its declaration of the purpose for which the corporation was created.

It is not proven that Allen Oliver, John Oliver and J. D. Lyons were the only persons working the claim at the time of the incorporation. But if this were so, it would not follow that the rights of those persons passed to the corporation without assignments, and by mere force of the certificate.

The notice posted by the corporation does not in any manner define the extent of the claim to which it refers; but on the contrary, distinctly repudiates the boundaries now claimed. It claimed the channel through Table Mountain, with all its dips and angles; and this channel, if there be one, as contended by plaintiffs, is many miles in length. Instead of apprising any one of the boundaries of any claim, it asserted its indefiniteness.

It is true, it refers to the claim held and occupied by the Experimental Tunnel Company since its location in June 12th, 1852; but the claim of the Experimental Company in June, 1852, was that specified in its notice, which also was indefinite, and was not from that day held or occupied by that company at all—for notice is not occupation.

The plaintiffs are, on their own showing, claimants of 4,500 feet measured along the base of the mountain; that is, nine hundred feet to the man; their claim having been taken up in the absence of any mining law whatever, by six persons. Such a claim, I submit, they could not hold as against persons entering under the mining laws adopted in January, 1855—in other words, against the defendants in this case—but their claim would be reduced to eighteen hundred feet, being three hundred feet to the man, and being so reduced, would not extend to the defendants' claim.

I am not aware that this Court has ever decided that in the absence of mining laws, a person may mark out and hold any amount of mining ground, and that his claim cannot be reduced by the subsequent adoption of mining laws. On the contrary, there are strong intimations the other way, and the case of *English* v. *Johnson* seems to be directly against it. The doctrine is unreasonable, and in conflict with the whole theory of our mining claims.

It is true, as sometimes said by the Court, mining laws cannot divest existing rights. But how can a right exist which has no foundation in law or custom—no other foundation, indeed, than the

will of the person asserting it ? I speak now of a right supposed to result, not from actual possession, for that is founded on law, but from a constructive possession, such as is contended for here. How, in the absence of rule or limit, furnished either by law or by mining regulations, which have the force of law, can there be any such thing as constructive possession ?

COPE, J. delivered the opinion of the Court—FIELD, C. J. and NORTON, J. concurring.

The plaintiff is a mining corporation, and the suit is brought to eject the defendants from nine hundred and twenty-six feet of a mining claim, the ownership of which is alleged to be in the plaintiff. The claim was located in 1852, by an association of individuals calling themselves the Experimental Tunnel Company, who posted a notice and proceeded with the construction of a tunnel. In 1853 the boundaries of the claim were run off and marked by the blazing of trees at the corners and along the lines ; and the work upon the tunnel was continued by certain of the members of the company until the plaintiff took possession in 1854. The plaintiff became a corporation on the second of May, 1854, the articles of incorporation being signed by the only members of the Experimental Company who seem to have participated in the affairs of that company, and specifying as the object of the corporation, " the prosecution and completion of the tunnel heretofore known as the Experimental Tunnel." These members of the Experimental Company were made officers of the corporation, and entered upon the discharge of their duties as such—one of them as president, another as secretary, and a third as one of the trustees. On the day the articles were filed, the notice of the company was taken down, and the following, signed by the president and secretary of the corporation, put up in its place : " Claim of Table Mountain Tunnel Company. This claim comprises the claim held and occupied by the Experimental Tunnel Company since its location, June 12th, 1852, up to this date, situated near Jamestown, Tuolumne county, California. Said claim commences about one hundred and ten feet west from the entrance of the upper tunnel of said company, and comprises the channel there existing from this point, with its dips and angles,

through Table Mountain; said channel having been heretofore un-
workable on account of water, as proven by many fruitless efforts
made previous to the location of said claim." The operations of
the plaintiff were commenced immediately thereafter, and the work
upon the claim has progressed continuously until the present time;
the portion in controversy, however, not yet being reached. In
1857 the boundaries of the claim were again run off and marked,
and in 1861 a survey was made, and the original marks were still
visible.

The defendants claim under a location made in 1855, overlapping
that of the plaintiff to the extent mentioned—of nine hundred and
twenty-six feet. On the day preceding the location, the miners of
the district adopted a code of rules for their government, and the
location was made in the manner designated in these rules. The
defendants afterwards proceeded to mine within the boundaries of
the plaintiff's claim, and they contend that under their location they
were entitled to do so. The rules adopted were limited in their
provisions to claims subsequently acquired, and claims previously
located were excluded from their operation.

The case was tried by a jury, and various exceptions taken
during the progress of the trial are relied upon for a reversal. The
plaintiff gave in evidence the facts stated in relation to the Experi-
mental Company, and one of the errors assigned is that this evi-
dence was afterwards stricken out. The Court considered a
conveyance from the company necessary to invest the plaintiff
with their rights, and the evidence was stricken out on the ground
that no conveyance had been shown. We are of opinion that the
Court erred in this respect, and that a conveyance by deed would
have passed no greater interest than the plaintiff acquired by a
transfer of the possession. Rights resting upon possession only,
and not amounting to an interest in the land, are not within the
statute of frauds, and no conveyance, other than a transfer of pos-
session, is necessary to pass them. The rights of the company were
of this character, and the transfer of possession was as effectual for
the purpose intended as if it had been accompanied by a convey-
ance in writing. The plaintiff was put in possession as the successor
in interest of the company, and the intention undoubtedly was that

Table Mountain Tunnel Co. v. Stranahan.

whatever rights the company had should pass with the possession. There was no reservation in that respect; and the only rational theory upon the subject is, that the plaintiff was to take the place of the company, and stand in the same position with regard to the claim. The possession of the plaintiff being assailed, the acts of the company showing the character and extent of that possession were at least pertinent, and the ground assumed did not justify their exclusion. If these acts were sufficient in point of law, the plaintiff was entitled to the benefit of them ; and the case of *English* v. *Johnson* (17 Cal. 107) is decisive of the matter. There also the subject of dispute was a mining claim, the plaintiff relying upon prior possession, evidenced by work done, and by posting notices and marking the boundaries. There were mining regulations in force in the district, but neither of the parties claimed under them ; and the question was as to the sufficiency of the evidence of possession. "In mining claims," said the Court, "we require no other acts, as evidence of possession, than those usually exercised by the owners of such claims. A miner is not expected to reside upon his claim, nor to cultivate the ground, nor to inclose it. The claim is usually of a small strip of land compared with the extent of ground generally taken up for agricultural purposes. Its only value is in working it and extracting minerals. * * Where a claim is distinctly defined by physical marks, possession taken for mining purposes embraces the whole claim thus characterized, though the actual occupancy or work done be only on a part, and though the party does not enter in accordance with mining rules." The jury had been instructed that a possession of this character was sufficient to maintain the action, and the instruction was held to be a correct exposition of the law upon the subject. In the case at bar, the evidence stricken out tended to prove a similar possession, and as the plaintiff might have recovered upon it, the evidence was improperly excluded. The effect of the evidence was a matter for the jury, and whether or not such a possession was proved, is an inference from the facts which they alone were competent to draw. The Court had nothing to do with it, and the exclusion of evidence tending to influence the result, deprived the jury of the means of arriving at a just conclusion.

It is suggested that, under this rule, there is no limit to the quantity of ground that may be located as a mining claim.   This objection applies, however, to every location not made in pursuance of some regulation limiting the quantity, and the result flowing from it is that no such location would be valid.   Of course, it was not intended to push the objection to that extent, but we cannot admit the premise and avoid the conclusion to which it necessarily leads. If the want of a limit shows the rule to be wrong, no rule subject to the same objection can be right, and a location made under a rule of this description must of necessity be invalid.   There is another answer, however, which is more satisfactory, as it goes to the foundation of the objection, and furnishes a practical solution of the difficulty.   No location can be so extended as to amount to a monopoly ; and in the absence of local regulations prescribing a limit, recourse must be had to general usage.   If the quantity of ground included be unreasonable, the location will not be effectual for any purpose, and possession under it will only extend to the ground actually occupied.   In other words, the extent of the occupancy will determine the extent of the claim, and whether the quantity is unreasonable or not must depend upon the customs prevailing generally upon the subject.

The mining laws of the " Wallaville District " were improperly given in evidence, for the reason that they were inapplicable to a claim of this character.

The judgment is reversed, and the cause remanded for a new trial.

On petition for rehearing, COPE, J. delivered the opinion of the Court—FIELD, C. J. and NORTON, J. concurring.

We are asked by the counsel for the respondent to modify certain portions of the opinion delivered by us in this case.   On looking at the mining rules of the Table Mountain District, we find that an error was committed in saying that claims previously located were excluded from their operation.   The rules contain a provision to that effect, but they also provide that persons holding such claims shall have one week to establish their boundaries in the manner therein required.   A construction of these provisions is unnecessary

for the purposes of this appeal, and we refer to the matter to guard against misapprehension, to which the language of the opinion would probably lead.

The counsel objects to that portion of the opinion relating to the mode of determining the reasonableness of a claim in the absence of local regulations limiting the extent. He understands us to have said that in such case recourse must be had to general usage previously established, and argues that under this rule there would be no means of imposing a limitation upon persons whose claims were located anterior to the existence of customs of a general nature fixing the quantity. We think the opinion does not warrant the view taken of it, but it is proper to say that while a general custom, whether existing anterior to the location of the claim or not, may be given in evidence upon the question of extent, a mere local regulation stands upon a different footing. The former results from the general sense of the mining community as to what is just and reasonable in that respect, and in connection with the particular circumstances of the case may be safely relied on in arriving at a conclusion. The latter owes its origin to the will and discretion of a few individuals, and operating directly upon the location sought to be limited, would be an improper and unjust criterion of action; as in many cases its effect would be to deprive persons of property to which, prior to its adoption, they had a valid legal right.

Rehearing denied.