# THE TABLE MOUNTAIN TUNNEL COMPANY *v.* S. N. STRANAHAN *et al.*

Mining Custom.—A local mining regulation or custom, adopted after the location of a claim, cannot be given in evidence to limit the extent of a claim previously located.

Customs as to Size of Mining Claims.—Where there are no local customs or regulations in force in the district where a mining claim is located at the time of its location, general customs then in force are admissible in evidence upon the question of the reasonableness of its extent.

General Custom as to Size of Claims.—Evidence of local usages and customs in different counties in the mineral regions, varying from each other as to the size of locating a mining claim, is not admissible in evidence to show the reasonableness of its extent. A general uniform custom should be proved if one exists.

Reasonableness of Size of Claims.—If the defendants in an action claim that when they took up the ground in dispute a local custom allowed them three hundred feet front to each man, and that they located to that extent, they are estopped from asserting that the plaintiff's location to the same amount, made before the adoption of the custom, was unreasonable in size.

Idem.—If there is no evidence as to the general custom of the size of locating mining claims, instructions to the jury upon the reasonableness of its size depending on general custom are irrelevant.

Statute concerning Customs.—It is error for the Court to instruct the jury that "the statute provides that general customs, usages, and regulations ⁂ ⁂ ⁂ shall govern the decision of the action." The statute speaks only of local customs.

Plea of Statute of Limitations.—An answer which avers that "if plaintiffs ever had any right or title to their claims or to any portion thereof they are barred by the Statute of Limitations, as they, the defendants, have been in the quiet and peaceable possession of the same adversely to these plaintiffs for a period of over five years," is not a good plea of the Statute of Limitations.

Change in Written Mining Regulation.—An alteration, made after their adoption, in one of several mining regulations reduced to writing by the officers of the meeting, does not change the legal effect of the other articles.

Paying Channels in Claim.—If a company locates a mining claim of a certain width, extending through a mountain from base to base, and afterwards another company succeeds to their possession, whatever it was, and puts up a notice stating that its claim comprises the claim held by the old company, ⁂ ⁂ ⁂ and comprises the channel then existing, with its dips and angles, through the mountain, the latter company is not restricted by this notice to one paying channel within the claim.

Appeal from the District Court, Fifth Judicial District, Tuolumne County.

This action was commenced in April, 1861. There have been two former appeals to this Court which are reported in the 20 Cal. 198, and 21 Cal. 548. The material facts, except

such as refer to the points now passed on by the Court, will be found reported on the first appeal.

The mining district where the claim in dispute is located is called the Table Mountain District. In 1855, at the time the plaintiff claimed to have entered upon and succeeded to the rights of the Experimental Company, there were no mining customs or regulations in force in the district in regard to the size of a claim located for tunnelling purposes. One of the principal questions raised and discussed on the trial in the Court below seems to have been the reasonableness of the size of plaintiff's claim. Plaintiff introduced testimony tending to show that in 1853 the Experimental Company marked the boundaries of the claim as now claimed by plaintiff, by blazing trees along the boundary lines. It was proved that said company then commenced running a tunnel into the claim on the easterly side of the mountain, and worked on it continuously until the corporation was formed, in May, 1854, and that the corporation (the plaintiff) then commenced work in the same tunnel. The corporation did not mark any boundary lines, but claimed to the old boundary lines of the Experimental Company. These boundaries extended through Table Mountain from base to base, with a front on each side of about four thousand feet. The mining regulations in the district were adopted at a meeting of the miners on the 9th day of January, 1855. Previous to this time the defendants had been working a claim adjoining the boundaries as claimed by the Experimental Company. On the day after the passage of the regulations the defendants located a tunnel claim, embracing a portion of the ground within the boundary lines as marked by the Experimental Company. The mining regulations adopted in 1855 allowed each man a claim for tunnelling purposes three hundred feet in width at the base of the mountain, extending entirely through the mountain in a direct line. Plaintiffs proved that the Experimental Company, in May, 1854, joined with them other parties, to the entire number of fourteen, who formed the corporation, and claimed that the size of the claim was not unreasonable for that number.

Defendants, to show that the claim was of unreasonable size
at that time, called two witnesses to prove a general custom
in the State as to size of claims before 1855.   Henry Tomlin-
son testified that as early as the latter part of 1853 he knew
the general custom in Siskiyou County, and that claims were
fifty feet front, running through the mountain.   He also said
that he was acquainted with some in Tulare County, and that
they were one hundred and twenty-five or one hundred and
fifty feet front.   Jacob Wickenham testified that he mined at
Yankee Jim's, Placer County, in 1851, and that the custom at
that place, before the miners made laws, was one hundred and
seventy feet to the man, through the mountain, from base to
base; and that he also mined at White Rock, El Dorado
County, in 1851–2, and that the custom at that place was one
hundred and fifty feet to the man.   He also said he never
knew of mining claims in Tuolumne County being regulated
by these customs.

The general tenor of the four first instructions of the Court
was that if there was no local custom regulating the size of a
claim, the reasonableness of its size must be determined by
general custom.

The fifth instruction was in the following words: "The
statute law of the State provides that such customs, usages
and regulations, when not in conflict with the Constitution
and laws of this State, shall govern the decision of the action."

The Sixteenth Article of the written mining regulations
provided that "the foregoing rules and regulations shall not
be so construed as to conflict in any way with any claim
already located and worked upon."   The plaintiffs introduced
evidence tending to prove that this Article had been surrepti-
tiously altered after its passage.

The defendants had run their tunnel into the westerly side
of the mountain, and after it entered the mountain, had crossed
the line claimed by plaintiffs.   Defendants recovered judgment
in the Court below.   On motion of plaintiffs the Court granted
a new trial, and defendants appealed from the order.

The other facts are stated in the opinion of the Court.

*C. Dorsey*, for Appellants, argued that by the former opinion in this case, reported in the 20 Cal., the Court did not mean to say that if there was no local custom regulating the size of a claim, that only such general customs could be given in evidence as prevailed generally throughout the State, for with that construction of the decision it could have no practical application, as all customs were local, or applied only to particular districts, and there was no uniformity among them. He contended that the Court meant that the custom in different localities could be given in evidence, in order by that means to arrive at the general custom by the aggregate of local customs.   He referred to 2 Green on Ev. 250.

*H. P. Barber*, for Respondent, argued that the proper construction of the opinion in the 20 Cal. was, that any custom which was local could not be given in evidence to prove a general custom ; and cited 4 Term R. 157 ; 16 N. Y. R. 392 ; Bouvier's Law Dict. "Custom ;" and *Leach* v. *Perkins*, 4 Shepley, 462.

By the Court, RHODES, J. :

The appeal is taken from the order granting the plaintiff a new trial.   Both parties have discussed most of the grounds of the motion for a new trial, but as the record does not show upon which of the grounds the Court relied in making the order, we shall consider only those which in our opinion clearly dispose of this appeal.

When this cause was formerly before the Court (20 Cal. 198) it was held on the authority of *English* v. *Johnson*, 17 Cal. 107, that " where a claim is distinctly defined by physical marks, possession taken for mining purposes embraces the whole claim thus characterized, though the actual occupancy or work done be only on a part, and though the party does not enter in accordance with mining rules."   After laying down this rule which disposed of the point before the Court— it relating to the admissibility of certain testimony tending to

prove that those under whom the plaintiff claimed had taken up and defined in that manner a mining claim, including the premises in controversy—the Court proceeded to dispose of an objection to the rule, urged by counsel, that under the rule there would be no limit to the quantity of land that might be located as a mining claim.   Two answers were given to this objection; the second, which was regarded as the most satisfactory, being that "no location can be so extended as to amount to a monopoly; and in the absence of local regulations prescribing a limit, recourse must be had to general usage."   In the opinion on the petition for rehearing, Mr. Justice Cope again alludes to the objection to the rule, and says: "That while a general custom, whether existing anterior to the location of the claim or not, may be given in evidence upon the question of extent, a mere local regulation stands on a different footing," and would be inadmissible to limit the extent of a claim previously located.   The defendants' counsel regards this answer to the objection as a limitation or modification of the general terms of the rule, and treats it as constituting a part of the law of the case; but although it amounts to no more than a dictum, we are satisfied with the doctrine announced, except in respect to general usage, which has its beginning after the location of the claim has been made, and the case at bar does not demand the solution of that branch of the doctrine.

The defendants asked of their witnesses this question: "Do you know the customs in any district of this State, in regard to locating tunnelling claims, as to their extent?"   In answer, they stated the customs prevailing in mining camps with which they were acquainted, in several counties other than the one in which is situated the claim in controversy, all of which differed from each other as to the extent of the claims; but they did not testify to any general custom or usage regulating the extent of claims.   The plaintiff objected to the question, and the objection being overruled, moved to strike out the evidence, and the motion was denied.   This was not competent evidence of a general custom, but as far as it

amounted to anything on that point, it tended strongly to negative its existence.   We do not undertake to say that in this respect any general custom, usage or regulation does or ever did prevail among the miners, or in the mineral regions of this State, or any considerable portion of them—as there probably does in regard to the *mode* of locating claims—but if such custom exists it must be susceptible of proof; but evidence of local usages and regulations varying from each other, are not admissible for this purpose, for they tend to show that the usage is *not* general.

The counsel for the defendants contends that, giving the opinion a reasonable and proper construction, it means that evidence showing the extent of a single claim, or of the claims in a single locality, is not admissible to show that the plaintiff's claim is unreasonable; but that the custom of several localities may be given in evidence "in order to get the general sense of the mining community on this point."   Evidently, neither the largest nor the smallest claim would be selected, but the average would have to be struck to serve as a criterion.   The proposition may be stated in another form— the general custom may be ascertained by finding the mean of the several local customs.   This involves a palpable contradiction, for different local customs being shown, a general custom regulating the same matter and prevailing at the same places is impossible.

If the proof is as we understand it, that the defendants entered, claiming by virtue of a location under the local mining laws, which allowed a claim of three hundred feet front for each man, and that the plaintiff's claim did not exceed that ratio, the defendants are not in a position to allege that the plaintiff's claim is unreasonable in extent, for, by locating their claims under and in accordance with those laws, they affirm that the limit therein provided is not unreasonable.   If that amount was not unreasonable for the defendants to locate under the local laws, the same amount was not unreasonable for the plaintiff to continue to hold after the adoption of the laws.

In view of what we have already said, it is unnecessary to consider at length the first four and the sixth and seventh instructions of the Court. They were irrelevant, because there was no evidence of a general custom.

The fifth instruction is irrelevant because it substitutes general customs for local customs, which, it is provided by section six hundred and twenty-one of the Practice Act, " when not in conflict with the Constitution and laws of this State, shall govern the decision of the action."

The next point we shall notice relates to the charge in respect to the alleged adverse possession of the defendants. They answered that " if plaintiffs ever had any right or title to their claims, or to any portion thereof, they are barred by the Statute of Limitations, as they, the defendants, have been in the quiet and peaceable possession of the same adversely to these plaintiffs for a period of over five years." The Court instructed the jury upon that point, without questioning the sufficiency of the answer, and it does not appear that the plaintiff raised any objection to it; but as the cause must be remanded for a new trial it is proper to say that the Statute of Limitations is not well pleaded. The averment that the plaintiff is " barred by the Statute of Limitations" is merely a conclusion of law. It does not present any issuable fact. (*Schroder* v. *Johns,* 27 Cal. 274; *Caulfield* v. *Sanders,* 17 Cal. 569.) The " period of over five years," during which, it is alleged, the defendants were in the adverse possession, is not charged as having preceded the commencement of the action; but from the manner in which the averment is made, it must be held to mean the period next preceding the filing of the answer.

The plaintiff complains of the charge of the Court in respect to the alleged alteration of Article XVI of the Table Mountain laws—that such alteration if made, did not alter the legal effect of the other articles. The charge was clearly right. That Article itself, after its passage, would not be changed or in any manner impaired by any attempted surreptitious altera-

50

tion. Such alteration in the original draft or a copy of the law might make it more difficult to prove the law, but it would not nullify or change any Article of the law. The rule precluding a party to a contract who has altered it in some material particular from offering it in evidence has no application to a system of mining laws and regulations. If, the alteration of which the Court speaks, is to be understood as counsel seem to regard it, as made at such a time and in such a manner that it in fact worked a change in Article XVI— that is to say, that the Article, when it took on an authentic shape by being engrossed and signed by the officers of the miners' meeting, differed from the same subject matter when it was passed on by the meeting—then it becomes important to ascertain the true construction, as well as the effect of the Article. Much more proof might be required of the plaintiff as against a party claiming under those rules, in case Article XVI excepts " any claim," than there would be if the exception is of " Oliver Company's claim." But it is useless to attempt to give construction to the Article before it is found what is its true reading.

We fail to see in the record any proper ground for the instruction, restricting the plaintiff to the one channel worked by it on the eastern side of the mountain. The only matter pointing in that direction is the notice posted by the plaintiff on the 2d of May, 1854. In that the company state that its claim " comprises the claim held and occupied by the Experimental Tunnel Company, etc., and comprises the channel there existing from this point, with its dips and angles, through Table Mountain."

Whether the company can follow the channel beyond the limits of the Experimental Tunnel Company's claim is not a question here; but the plaintiff does not limit its claim to the channel. The notice as clearly indicates their intention to hold the whole of the Experimental Tunnel Company's claim, as it does to hold the channel through the mountain; and guided by the notice, no reason appears why the channel,

rather than the claim mentioned, should be taken as indicating the limits of the plaintiff's claim.

The order granting a new trial is affirmed.