# ROBERT PATTERSON *v.* THE KEYSTONE MINING COMPANY.

SALE OF A MINING CLAIM.—The question discussed whether a verbal sale of a mining claim will pass the title, or whether, since the passage of the Act of the 13th of April, 1860, such sale must be in writing.

ACT RELATIVE TO CONVEYANCE OF MINING CLAIMS.—The Act of April 13th, 1860, relative to the conveyance of mining claims, applied to gold claims only until the amendment of 1863, striking out the second section, after which it applied to all mining claims.

A PLEADER AVERRING A WRITTEN SALE MAY PROVE A VERBAL ONE.—The party making an allegation in a pleading that the sale of a mining claim under which he claims title was in writing, is not thereby precluded from proving that the sale was a verbal one.

A PLEADER IS NOT BOUND BY AN ALLEGATION OF EVIDENCE.—An allegation in a pleading does not estop the party pleading it from proving that the allegation is not correct, unless the allegation is made of an issuable fact.

PROOF OF A SALE MADE IN WRITING. — If a sale of a mining claim is made in writing, the proof of the sale must be made by producing the writing, or its loss must be established; after which, oral testimony can be offered of the contents of the written instrument.

PROOF OF CONTENTS OF WRITTEN INSTRUMENT.—Evidence that a written instrument had been in the possession of one or the other of two men, and that one of the two had not got it, and had searched for it and could not find it, without the same proof as to the other, does not lay the foundation to admit oral proof of its contents.

VERBAL POWER TO EXECUTE A BILL OF SALE.—A verbal power is sufficient to authorize an agent to sign the name of the grantor to a bill of sale of a mining claim, where the grantor has first agreed in person with the grantee upon the terms of sale.

POSSESSION OF A MINING CLAIM.—The possession of a mining claim by a company composed of several persons, is the possession of each one of its members of his undivided share.

CHANGE OF POSSESSION OF AN INTEREST IN A MINING CLAIM. — The withdrawal of a member from a participation in the affairs of a mining company, and another taking his place and representing his undivided interest, is a change of possession of that undivided interest.

PARTY BOUND BY STATEMENT OF HIS WITNESS.—If a party offers a witness to prove the sale of a mining claim under which he claims, and the witness says the sale was in writing, the party is bound by the statement of the witness, and must produce the writing or account for its loss.

POINTS OF COUNSEL SHOULD BE CONSISTENT WITH EACH OTHER. — In an action to try the right to a mining claim, counsel cannot claim that there was a bill of sale to the opposite party for the purpose of excluding evidence of a verbal sale, and at the same time insist that the bill of sale is void.

APPEAL from the District Court, Eleventh Judicial District, Calaveras County.

In the month of August, 1860, Wm. L. Callahan, with nineteen others, located a copper vein or lode in Calaveras County, and named it the Keystone Claim. Callahan, at the time of the location, owned one undivided one twentieth of the mine.

On the 27th of November, 1860, the Keystone Mining Company was incorporated, and for some four weeks before the act of incorporation, Ambrose Blatchly had claimed to own and represent Callahan's interest, and became one of the corporators, and received certificates of stock for the same, and delivered possession of the same to the corporation for the stock. On the 3d day of June, 1861, Callahan executed to plaintiff, Patterson, a deed of all his right, title, and interest in the claim. The plaintiff claimed under this deed. On the 20th day of July, 1861, Patterson commenced an action to recover possession of the one twentieth which formerly belonged to Callahan. The defendant claimed that in October, 1860, Callahan had sold his interest to Blatchly, and that Blatchly had entered into possession and had delivered possession to the company.

On the trial, T. W. Bean, a witness for the defendant, testified that in October, 1860, Callahan gave him verbal authority to sell his interest in the mine to Blatchly, and that he contracted with Blatchly for Callahan to sell him the same for one hundred and fifty dollars, and informed Callahan, who assented to the contract and told Bean to give Blatchly a bill of sale for the same in Callahan's name, as his attorney in fact, and that he then executed to Blatchly a bill of sale, in the name of Callahan, as his attorney. The testimony was admitted, subject to all legal objections. The defendants then moved the Court to strike out Bean's testimony, because a written sale was alleged in the answer, and because the alleged parol sale was void, and also because no authority was shown to execute the bill of sale, as a parol authority was insufficient for such a purpose. The Court denied the motion, and defendant excepted. The defendant also moved the Court to disregard the evidence concerning the contents of the bill of sale, because

46

it was not shown to be lost.    The Court denied the motion, and defendant excepted.

The trial was by the Court, and the Court found as a fact that the sale from Callahan to Blatchly was by parol.    The defendant recovered judgment, and plaintiff appealed.

The other facts are stated in the opinion of the Court.

*Geo. Cadwalader*, for Appellant, argued that the defendant having alleged a written sale in his answer, from Callahan to Blatchly, could not recover upon a parol sale, and cited *Eagan* v. *Delaney*, 16 Cal. 77 ; and that the loss of the bill of sale, testified to by Bean, was not established so as to admit parol testimony of its contents, and cited *Crary* v. *Campbell*, 24 Cal. 636 ; 28 Maine, 367 ; *Kimball* v. *Bellow*, 13 N. H. 58 ; and *Murray* v. *Bucannan*, 7 Blackford, 549.    He also argued that even if the bill of sale had been produced, it would have conveyed no title, inasmuch as Bean had only verbal authority to execute it, and cited *Vidian* v. *Griffin*, 21 Cal. 391 ; *Hanford* v. *McNair*, 9 Wend. 54 ; and *St. John* v. *Kidd*, 26 Cal. 259.

*H. P. Barber*, for Respondent, argued that the verbal sale of the claim, if such it was, was good, as it had become the law of this case as decided on the former appeal in *Patterson* v. *Keystone Company*, 23 Cal. 575.    He also argued that the defendant was not precluded from proving a parol sale, because he had unnecessarily plead a written bill of sale, and that under the denials of plaintiff's title in the answer, defendant might have proved a written transfer without pleading it, and cited *Smith* v. *Folger*, 15 Cal. 275 ; *Coryell* v. *Cain*, 16 Cal. 567 ; and *Stark* v. *Barrett*, 15 Cal. 361.    He also argued that as the Court found a parol transfer from Callahan to Blatchly, that the plaintiff's points concerning the alleged parol power of Bean to make the bill of sale, and that no foundation was laid to admit parol evidence of the contents of the bill of sale, were irrelevant.

By the Court, Sanderson, J.:

I. It is settled that prior to the passage of the Act of the 13th of April, (Stat. 1860, p. 175), title to a mining claim would pass by a verbal sale, if accompanied by an actual transfer of the possession. This doctrine was first suggested in *Jackson* v. *The Feather River Water Company*, 14 Cal. 18, and formally announced in *Table Mountain Tunnel Company* v. *Stranahan*, 20 Cal. 198. It was subsequently affirmed in *Gatewood* v. *McLaughlin*, 23 Cal. 178, and in the present case when here on a former appeal (23 Cal. 575.) In the case of *The Copper Hill Mining Company* v. *Spencer et al.*, 25 Cal. 18, we held that this rule applies only to cases where the vendor is in the actual possession and can deliver it to the vendee, and not to cases where there is an adverse possession in a third party. But in neither of these cases was the effect of the Act of 1860 considered. The question is important. Does not that Act preclude verbal sales, and require them to be made in writing? Prior to its passage it is well settled that a written instrument was not necessary. Unless a change in that respect was desired no legislation was needed. Yet the Act was passed, and it was provided that " conveyances of mining claims may be evidenced by bills of sale," etc. Does not " may" mean must or shall? The first section of the Act concerning conveyances provides that " conveyances of lands or of any estate or interest therein may be made," etc. Here the word " may" means must or shall, and, if so, why is not the same true of the former? It may be doubted whether the rule in *Table Mountain Tunnel Company* v. *Stranahan* is not entirely abrogated by the Act of 1860; but we reserve the question, since its determination is not necessarily involved in this case.

By the second section the operation of the Act was limited to gold mines, and did not therefore embrace mines of the character of the one in suit. It is true this section was repealed in 1863 (Statutes, p. 98), and the operation of the Act thereby extended to all kinds of mines; but the sales

from Callahan to Blatchly, and from the latter to the defendant, were made while the second section was still in force, and hence their validity must be determined by the rule in *Table Mountain Tunnel Company* v. *Stranahan.* Under the law, therefore, applicable to this case, the sales from Callahan to Blatchly. and from the latter to the defendant were good, and passed the title, if accompanied by a transfer of the possession, if merely verbal, which, however, as will be seen hereafter, does not seem to have been the case with the former.

II. The defendant having alleged in his answer that the sale from Callahan to Blatchly was in writing, it is claimed that the defendant was thereby precluded from proving a verbal sale. In this respect we think the learned counsel for the appellant is in error. The allegation, so far as it avers that the sale was by a written instrument, is an averment of the evidence of the fact of sale, and would have been stricken out on motion for that reason. (*Green* v. *Palmer*, 15 Cal. 411.) It so far presented no issue. The only issue made by the allegation was as to the fact of sale. How the sale was made, whether by word of mouth or by a written instrument, was merely a matter of evidence and not an issuable fact. If the sale was, in fact, evidenced by a written instrument, the defendant was undoubtedly bound to prove it by producing the instrument, but not because of any rule of pleading, but because of the rule of evidence which requires the production of the best evidence of which the nature of the case admits. Suppose that at the time the answer was prepared the defendant was informed and believed that the sale was made in writing, but it subsequently and upon further inquiry turned out that the defendant was mistaken, and, in fact, the sale was a verbal one, would the defendant have been precluded, by its false averment that it was in writing, from proving the verbal sale? Undoubtedly not, for whether it was in writing or not, is not material, and only affects the mode of proof; for the averment that it was in writing might be stricken out without leaving the answer insufficient, which is the test,

whether the matter alleged is material or not. The question as to the defendant's right to introduce parol evidence of the sale could be made only upon demurrer to such evidence when offered, and in the solution of that question the pleadings could not be consulted as conclusive.

III. But it appears from the evidence of the defendant that there was a written bill of sale. The defendant was therefore bound to produce it or establish its loss before resorting to oral testimony. This was not done, and the Court erred in overruling the plaintiff's objection to the oral testimony for that reason. (*Crary* v. *Campbell*, 24 Cal. 634.) The testimony shows that the bill of sale was in the possession of defendant's witnesses and counsel at the former trial of the case. Bean testifies that he then and there, while on the witness stand as a witness, delivered it to A. P. Dudley, of counsel for defendant. Dudley testifies that he delivered it to Bean or Mandeville, and he thinks the former. Bean, however, on being recalled, stated that it was not redelivered to him by Dudley. Both Bean and Dudley stated that they had made thorough search among their papers but could not find it. Here the showing as to the loss stops, and is manifestly insufficient. It leaves the missing document in all probability in the possession of Mandeville, who was not called upon to give an account of its further fate. Mandeville being the last person shown to have it in his possession, inquiry should have been made of him in order to lay a foundation for the introduction of secondary evidence as to its contents.

It will not do to say that the bill of sale was not the act of Callahan, because Bean, who executed it as his attorney in fact, only had a verbal power, and also acted as the agent of Blatchly in negotiating the sale with Callahan. A verbal power was sufficient to authorize Bean to sign Callahan's name to an instrument of that character, and Callahan having agreed in person upon the terms of the sale it cannot be said that Bean was representing both buyer and seller.

There having been a bill of sale, the question as to whether

there was a change of possession within the rule in *Table Mountain Tunnel Company* v. *Stranahan* as to verbal sales becomes immaterial. But in view of the fact that another trial may be had, we deem it proper to say that the possession of the company was the possession of each of its members, and the withdrawal of Callahan from any further participation in the affairs of the company and Blatchly's taking his place and representing the interest or share in question was all the change of possession which could take place under the circumstances of the case, and satisfies the rule in *Table Mountain Tunnel Company* v. *Stranahan.*

Before leaving the case it is proper to add that, as to the fact whether Callahan gave Bean verbal power to sign his name to the bill of sale, the testimony is conflicting. Bean testifies that he did, but Callahan testifies that he did not. The Court did not find the fact directly either way. But Bean was a witness for the defendant, and the defendant was therefore bound by his statement on the question of primary and secondary evidence. At the trial counsel for the plaintiff seem to have been more or less under the influence of cross purposes. It seems to have been claimed that the defendant must produce the bill of sale, and yet, that if it was produced, it would prove nothing, because Bean had no power to execute it for Callahan; which apparent inconsistency is, in part, explained by the fact that they also claimed that a verbal sale would not pass the title, and hence if the bill of sale was void for want of power in Bean, the defendant's title would fail. If Bean had no power, the bill of sale was not the act of Callahan, and there was but a verbal sale, and it was competent for the defendant to prove it as such, without any showing as to the bill of sale. It being now determined that a verbal sale would pass the title, on another trial counsel must take one horn or the other of the dilemma. There either was a bill of sale which passed the title or there was not; and whether there was or not depends, as the evidence now stands, upon the fact whether there was a verbal power from Callahan to Bean to execute it in his name. Counsel will not be allowed

to claim that there was a bill of sale, but no power in Bean to make it.

Judment reversed and a new trial ordered.