738

Harvey H. Ostenberg and William H. Ostenberg, Jr., Administrators, Estate of W. H. Ostenberg, Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

Henry Haubens, Executor, Estate of Herman Reinbold, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 19306, 34015, 11418.   Promulgated September 30, 1929.

*George E. H. Goodner, Esq.*, for the petitioner.
*Orris Bennett, Esq.*, and *Hartford Allen, Esq.*, for the respondent.

742

**OPINION.**

MARQUETTE: The first question by which we are confronted in this proceeding, is what is the proper basis for computing the allowances to which Ostenberg and Reinbold were entitled for depletion of their respective interests in the mineral claim known as Jesse Lake? The respondent concedes that Jesse Lake had a total recoverable tonnage of 106,110 tons of dry salts on March 20, 1915, and the evidence shows that it had a recoverable tonnage of 78,119 tons on August 15, 1917. Also, it appears to be not disputed that Ostenberg and Reinbold each owned a one-ninth interest in Jesse Lake. It is contended on behalf of Ostenberg and Reinbold that they acquired their interest on August 15, 1917, upon the dissolution of the Potash Products Co. and that the entire claim had a fair market value of at least $5,000,000 on that date, while the respondent contends that they acquired their interest in 1915 for $3,333.33, each, and that their allowances for depletion should be computed on the basis of that cost.

We are unable to find from the record any ground for holding that Ostenberg and Reinbold acquired any interest in the mineral claim in question in the year 1915. They acquired nothing at that time as far as we can find except stock in the Potash Products Co.

It seems clear that if they ever acquired any interest in the claim, they did so in 1917 when the Potash Products Co. was dissolved. But the respondent urges that no conveyance was ever made to the Potash Products Co. by the eight locators and therefore the company never held title thereto. In the light of the evidence we are of opinion that the respondent's position is untenable. The evidence shows that the eight locators, on the one hand, and Ostenberg, Reinbold, and Redick on the other, entered into an agreement that a corporation would be formed, to which Ostenberg, Reinbold, and Redick would advance from $10,000 to $30,000; that the eight locators would convey their mineral claim to the corporation and that the corporation's stock would be divided, two-thirds to the eight locators and one-third to Ostenberg, Reinbold, and Redick. Ostenberg, Reinbold, and Redick performed their part of the contract and the Potash Products Co. was formed and one-third of the stock thereof was issued to Ostenberg, Reinbold, and Redick according to the agreement. The minutes of the corporation show that on March 20, 1915, a resolution was adopted authorizing the purchase of said mineral claim from said locators in consideration of the issuance to them of two-thirds of the corporation's stock. The stock was issued according to the resolution and the corporation entered into possession of and operated the claim. It would seem that under the circumstances, the corporation having paid for the claim and having been put in possession thereof, a court of equity would decree conveyance of the legal title if it were necessary.

However, under the law as we interpret it, a written conveyance was not necessary. In *Manuel* v. *Wulff*, 152 U. S 505, it is stated that "mining claims are property in the fullest sense of the word, and may be sold, transferred, mortgaged and inherited without infringing the title of the United States, and when a location is perfected, it has the effect of a grant by the United States of the right of present and exclusive possession." See, also, *Forbes* v. *Gracey*, 94 U. S. 762; *Belk* v. *Meagher*, 14 U. S. 279; *Noyes* v. *Mantle*, 127 U. S. 348. And in *Mining Company* v. *Taylor*, 100 U. S. 37, it was held that a written conveyance is not necessary to the transfer of a mining claim. In that case Mr. Justice Strong, delivering the opinion of the court, said:

The ownership of Wood in 1862 was an ultimate fact, and even if Taylor had no other right to the possession than that which he derived from Wood, by conveyance, it was not necessary to set forth the chain of conveyance by which Wood became the owner. A transfer of possession is sufficient. They would have been but evidence of Wood's ownership. Besides, a written conveyance is not necessary to the transfer of a mining claim. *Table Mountain Tunnel Co.* v. *Stranahan*, 20 Cal. 198.

We are of opinion that the Potash Products Co. became the owner of the Jesse Lake mineral claim in 1915 and that upon the dissolution of that company in 1917 the claim, together with the other assets, passed to the stockholders of the company in proportion to their respective stockholdings. It follows that Ostenberg and Reinbold each acquired a one-ninth interest in the claim in August, 1917.

Having decided that Ostenberg and Reinbold acquired their interest in Jesse Lake on August 15, 1917, we must next ascertain the fair market value of the claim at that time. On this point we do not deem an extended discussion of the testimony necessary. It is sufficient to say that the testimony shows that in August, 1917, Jesse Lake was one of the principal sources of potash within the United States; that the importation of potash into the United States from Europe was at that time cut off by the World War, and that due to these conditions Jesse Lake had a fair market value of at least $5,000,000. It is true that conditions in August, 1917, were abnormal, but we must determine the value of the property under the conditions as they then existed, not at some other date. The allowances of Ostenberg and Reinbold for depletion of their respective one-ninth interests in Jesse Lake will be computed on the basis of $5,000,000 for the entire claim on August 15, 1917, and a total recoverable tonnage of 78,119 tons of dry salts.

The petitioner, Ostenberg, claims that he did not receive payment on the dividend check of December 31, 1919, until some time in 1920 and did not receive payment on the dividend check of December 31, 1920, until the year 1921, and that the amount of the check of December 31, 1919, should be included in income for 1920 and the amount of the check of December 31, 1920, included in income for 1921. On this point the evidence shows that the checks in question were drawn on December 31, 1919, and December 31, 1920, respectively, but it fails to show that they were not delivered to Ostenberg on those dates, or that they could not have been cashed at that time if presented for payment. Ostenberg's testimony as to the transactions, is, "At that time the larger stockholders, like Mr. Stevens, Judge Redick, Frank Woods, Ed. Bauman of West Point, and myself, held our checks for the simple reason that the Refinite Company was close run owing to a lawsuit that had started against it, and we held ours over until we made some collections later on and cashed in." In the absence of any showing that the checks were not received or could not have been cashed by the petitioner Ostenberg in the years in which they were drawn, we are of opinion that the amount of the check of December 31, 1919, must be considered income for the year 1919, and the amount of the check of December 31, 1920, income for the year 1920.

The next question is whether or not the petitioner, Ostenberg, in computing his net income for 1923, is entitled to the benefits of section 204 (a) and (b) of the Revenue Act of 1921, which provides as follows:

SEC. 204. (a) That as used in this section the term "net loss" means only net losses resulting from the operation of any trade or business regularly carried on by the taxpayer (including losses sustained from the same or other disposition of real estate, machinery, and other capital assets, used in the conduct of such trade or business) ; and when so resulting means the excess of the deductions allowed by section 214 or 234, as the case may be, over the sum of the following: (1) the gross income of the taxpayer for the taxable year; (2) the amount by which the interest received free from taxation under this title exceeds so much of the interest paid or accrued with the taxable year on indebtedness as is not permitted to be deducted by paragraph (2) of subdivision (a) of section 214 or by paragraph (2) of subdivision (a) of section 234; (3) the amount by which the deductible losses not sustained in such trade or business exceed the taxable gains or profits not derived from such trade or business; (4) amounts received as dividends and allowed as a deduction under paragraph (6) of subdivision (a) of section 234, and (5) so much of the depletion deduction allowed with respect to any mine, oil or gas well as is based upon discovery value in lieu of cost.

(b) If for any taxable year beginning after December 31, 1920, it appears upon the production of evidence satisfactory to the Commissioner that any taxpayer has sustained a net loss, the amount thereof shall be deducted from the net income of the taxpayer for the succeeding taxable year; and if such net loss is in excess of the net income for such succeeding taxable year, the amount of such excess shall be allowed as a deduction in computing the net income for the next succeeding taxable year; the deduction in all cases to be made under regulations prescribed by the Commissioner with the approval of the Secretary.

It appears from the evidence that Ostenberg was a capitalist and an investor on a large scale. He invested in stocks and bonds and in various enterprises which showed a prospect of profit. Such investing and connections with the various enterprises in which he was interested constituted the only business he had, the source of his income, and his means of livelihood. In *E. M. Elliott*, 15 B. T. A. 494, this Board said:

What constitutes a business has previously been considered in a number of cases. In *Oscar K. Eysenbach*, 10 B. T. A. 716, we approved definitions of "business" which we will repeat here:

"'Business' is a very comprehensive term and embraces everything about which a person can be employed, Black's Law Dict. citing *People ex rel Hoyt v. Tax Comrs.* 23 N. Y. 242, 244. That which occupies the time, attention and labor of men for the purpose of a livelihood or profit. 1 Bouvier's Law Dict. p. 273. Approved in *Flint* v. *Stone & Tracy*, 220 U. S. 107; *Von Baumbach* v. *Sargent Land Co.* 242 U. S. 503."

There is no dispute between the parties as to the amount of loss to be taken, if any amount is to be used as a net loss.

We are of opinion that during the years 1921 to 1923, inclusive. Ostenberg was regularly engaged in carrying on a trade or business, within the meaning of section 204 (a) of the Revenue Act of 1921, and that in computing his net income for 1923 he is entitled to the benefits of section 204 (b) of that Act.

The petitioner in the case of the estate of Herman Reinbold alleges that the respondent erred in denying to Reinbold deductions for losses claimed to have been sustained upon the abandonment of certain mining claims in 1919 and 1920. No competent evidence was produced in support of this allegation, and on this point the respondent's determination is approved.

The respondent determined an overassessment in the case of Reinbold in the amount of $764.94 for the year 1921, and the petition alleges that the tax for that year is in controversy. The record does not show that the overassessment arises from the disallowance in whole or in part of any claim for abatement, and we therefore have no jurisdiction over the case of Reinbold in so far as it relates to the year 1921 (*Cornelius Cotton Mills*, 4 B. T. A. 255), and counsel for the petitioners so conceded at the hearing.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

SMITH, dissenting: The basis for depletion laid down in section 214 (a) (10) of the Revenue Act of 1918 is:

In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case, based upon cost including cost of development not otherwise deducted: * * *.

What was the cost to Ostenberg and Reinbold of their interests in the Jesse Lake mineral deposit? The findings of fact show that each of these individuals originally advanced $3,333.33 for one-third of the capital stock of the Potash Products Co. These amounts were not paid for capital stock, but were simply loans to the corporation in consideration of which they received the shares of stock. The loans were repaid to them in 1915. They never invested a dollar additional for any interests either in the acquisition of shares of stock of the company or for their interests in the mineral claims. There is no evidence that there was paid to them upon the dissolution of the corporation as a liquidating dividend a one-ninth interest in the claims found to have a value at that time of $5,000,000.

The amount of the allowance for depreciation (also depletion) is the sum which should be set aside for the taxable year, in order that, at the end of

the useful life of the plant in the business, the aggregate sums set aside will (with the salvage value) suffice to provide an amount equal to the original cost. (*United States* v. *Ludey*, 274 U. S. 295.)

Since Ostenberg and Reinbold had no investment in their interests in the Jesse Lake mineral claims, I am at a loss to understand the basis for allowing them any deduction for depletion.

The findings of fact show that Ostenberg was an investor in the stocks and bonds of numerous corporations. Section 204 of the Revenue Act of 1921 defines a net loss as one resulting " from the operation of any trade or business." In my opinion the findings do not warrant a conclusion that Ostenberg was engaged in the " operation " of any trade or business. There is no finding that there was any establishment or office in which any trade or business was carried on by Ostenberg. In my opinion an investor in stocks and bonds of corporations for profit for himself is not entitled to the benefits of section 204 of the applicable taxing Act, and I do not see how this case can be differentiated from the case of the ordinary investor.