# SUPREME COURT.

JAMES H. BUCKLIN agt. HELEN M. CHAPIN, Administratrix, &c.

*Reference of Claims against Executors and Administrators.* On the 11th of May, 1866, the surrogate of Herkimer county made an order or writing in this case as follows:

" SURROGATE'S COURT, Herkimer County. In the matter of the claim of *James H. Bucklin* agt. *The Estate of Edmund G. Chapin.* The claim of James H. Bucklin having been presented to the administratrix and rejected, and the parties agreeing to a reference: It is ordered by the surrogate, that Hon. Amos H. Prescott, Martin W Priest, Esq., and William T. Wheeler, Esq., and they are hereby appointed, referees to hear and determine the claim of said Bucklin; and let this order be entered with the clerk of Herkimer county.

" Dated, 11th May, 1866, at Herkimer.        VOLNEY OWEN, *Surrogate.*

Bucklin agt. Chapin.

"We assent to the above order, and consent the same to be entered May 11th, 1866.

"HARDIN & BURROWS, *Attorneys for plaintiff.*

"H. LINK, *Attorney for administratrix.*

"Indorsed, Filed 11 May, 1866.

"Z. GREENE, *Clerk.*"

*Held*, 1st. That this order and consent taken together are an *agreement in writing to refer* required by the statute.

2d. That they constituted an *approval by the surrogate* of the persons agreed on as referees.

3d. That they were filed, and the fact of filing is noted on the paper, which answers the requirement that the *agreement and approval must be filed.*

4th. That the requirement of the statute, that the rule referring the claim to the persons indicated must be *entered by the clerk of the supreme court,* can be complied with by an entry by the clerk *nunc pro tunc,* if it was not actually entered at the time of filing.

Assuming, however, that the papers are not in conformity to the statute, the referees nevertheless acquired jurisdiction to hear, try and determine the matters in controversy between the parties, by the *voluntary appearance* of the parties, the supreme court having jurisdiction over such claims, which were submitted to the referees; and their report is legal and binding until set aside by the court in some proceeding properly instituted for that purpose.

There is no more necessity for an agreement in writing and rule of reference in the class of cases under the statute, like the present, than there is in references under the Code (§ 270); and under the latter it is well settled that proceedings upon a reference is a waiver of all objections because of irregularities.

The appearance before the referees, the trial of the claim presented and report thereon, are all that are necessary to justify the entry of a judgment. All the preliminary steps may be supplied *nunc pro tunc.*

*Syracuse General Term, April,* 1868.

*Before* FOSTER, MULLIN *and* MORGAN, *Justices.*

THE defendant is the administratrix of her husband, E. G. Chapin, deceased, having been appointed by the surrogate of Herkimer, in December, 1861.

The plaintiff, claiming to have a debt due to him from the intestate, presented an account to the agent of the defendant, on the 17th December, 1862, by which a balance was claimed to be due of $715.59.

This account was not brought to the knowledge of the defendant until April, 1866, when she served notice on the plaintiff that it was rejected.

On the 11th May, 1866, a paper, of which the following is a copy, was drawn and signed by Volney Owen, surrogate of Herkimer county:

"SURROGATE COURT, *Herkimer County.* In the matter of

the claim of *James H. Bucklin* agt. *The Estate of Edmund G. Chapin.*

" The claim of James H. Bucklin having been presented to the administratrix and rejected, and the parties agreeing to a reference : It is ordered by the surrogate, that Hon. Amos H. Prescott, Martin W. Priest, Esq., and William T. Wheeler, Esq., and they are hereby appointed, referees to hear and determine the claim of said Bucklin; and let this order be entered with the clerk of Herkimer county.

"Dated 11th May, 1866, at Herkimer.

"VOLNEY OWEN, *Surrogate.*

" We assent to the above order, and consent the same be entered May 11th, 1866.

"HARDIN & BURROWS, *Attorneys for plaintiff.*

" H. LINK, *Attorney for administratrix.*

" Indorsed, Filed 11 May, 1866.

"Z. GREENE, *Clerk.*"

The parties appeared before the referees above named, and they heard their proofs and allegations, and made a report, entitled in the supreme court and addressed to it, by which they found due to the plaintiff $714.59, for which sum they ordered judgment.

The defendant appealed from this judgment to the general term ; and when the appeal was brought on for argument, the court refused to hear it, and required the parties to move at the special term to confirm the report, and for judgment, and from the judgment, if there ordered, an appeal might be taken.

The plaintiff's counsel, instead of conforming to the direction thus given, moved at a special term held by Justice MORGAN, in Onondaga, in July last, to set aside the appeal; exceptions and notice of appeal taken and made by defendant, on the ground ·that there was no agreement in writing to refer the claim to the persons named as referees, nor any approval of such persons by the surrogate, by reason whereof

the hearing and decision of the referees became and was an arbitration, and not a reference, under the statute.

The court granted the motion, and from the order granting it the defendant appeals.

FRANCIS KERNAN, *for defendant.*
GEORGE A. HARDIN, *for plaintiff.*

*By the court,* MULLIN, J.   The Revised Statutes (3*d vol.* 5*th ed.* 175, § 41) provides, if an executor or administrator doubt the justice of any claim presented to him, he may enter into an agreement in writing with the claimant to refer the matter to one or three referees, to be approved by the surrogate; and upon filing such agreement and approval with the clerk of the supreme court, a rule shall be entered by the clerk, referring the matter to the persons so selected.

The next section clothes the referees with the same powers as if the reference was in action in the court in which order of reference is entered.

In order to confer jurisdiction on the court under this statute, it is not necessary there should be a literal compliance with its terms; a substantial compliance is enough.

To give jurisdiction, there must be :

1st. An agreement in writing to refer.

There is no formal agreement signed by the parties, but the order signed by the surrogate recites the presentation of the claim, and that the parties have agreed on a reference. The attorneys of the parties sign a writing at the foot of the order that they, the parties, consent to the order.   Laying out of view the presumption that a formal agreement was preferred, I think the order and consent, taken together, are an an agreement in writing to refer.

If the attorney for the administratrix had made an offer in writing to refer, and the attorney had signed and delivered to her a written acceptance of the offer, it would not be con-

tended but that the two papers would constitute a valid agreement.

Suppose the surrogate had written, the parties have agreed to refer the claim in dispute to these men as referees, naming them, and the attorneys had written beneath it, " we hereby agree to the above reference," can it be doubted but that the two papers, taken together, would have been an agreement under the statute ?

This is exactly what has been done. The paper written by the surrogate takes the form of an order, instead of a mere statement that the parties had agreed to refer.

2d. The persons agreed on as referees must be approved by the surrogate.

There can be no question but that the surrogate approved the men selected. · No more conclusive evidence of approval could be given.

3d. The agreement and approval must be filed. They were filed, and the fact of filing is noted on the paper.

4th. A rule referring the claim to the persons indicated must be entered by the clerk of the supreme court.

The agreement takes the form of an order. It was filed with one of the clerks of the supreme court; and the order must be entered in that court, as there is no other court having jurisdiction to make the order.

Entitling the order in surrogate's court could not impair the regularity of the order. The county clerk was not the clerk of the surrogate's court; he could not enter it, therefore, in that court, and the entry could have effect only in the supreme court, whose clerk he was and in which court it could be regularly entered.

But assuming that it never was entered by the clerk, it can be done *nunc pro tunc*, and should be so entered to prevent a failure of jurisdiction.

But if it must be assumed that the papers are not in conformity to the statute, I am nevertheless satisfied that the referees acquired jurisdiction to hear, try and determine the

matters in controversy between the parties, and that their report is legal and binding on the parties until it is set aside by the court in some proceeding properly instituted for that purpose.

The supreme court has jurisdiction over the claims which were submitted to the referees; in other words, it has jurisdiction of the subject matter. By the voluntary consent and appearance of the parties, jurisdiction of their persons was obtained; and when jurisdiction over both is acquired, the proceedings thereafter are valid, however irregular they may be.

Section 270 of the Code provides that all or any of the issues in an action may be referred upon the written consent of the parties. Under the old practice, the reference of the issues in an action not referable, or to a greater or less number than the statute prescribed, was a discontinuance of the action, and the reference became an arbitration merely.

It will be seen that a consent *in writing* is necessary to refer issues in all cases in which the court may not compel a reference, and hence a written consent is just as necessary to a valid reference under the Code, as to a valid reference under the statute relating to the reference of claims against executors and administrators.

It was held in *Leaycraft* agt. *Fowler* (17 *How. Pr. R.* 259) that the consent to refer under section 270 of the Code may be written by the parties, or their attorneys, or by the clerk entering their consent in his minutes, or by the referees in their minutes, consent being given thereto. And the parties might waive any entry other than that made by the referees on their minutes. In that case, after appearing before the two referees to whom the issues had been referred, a third was added, and the only entry was by the referees in their minutes.

The same was held in *Keator* agt. *Ulster Plank Road Co.* (7 *How. Pr. R.* 41). In that case there was no writing, the agreement to refer was in open court; and it was held the

requirement of the statute as to consent in writing could be and was waived.

As to the power to waive the requirement, see *Baker* agt. *Bramen* (6 *Hill,* 47) ; *Lee* agt. *Tillotson* (24 *Wend.* 337) ; *People* agt. *Murry* (5 *Hill,* 468) ; *Embury* agt. *Conner* (3 *Coms.* 511).

In *Harris* agt. *Bradshaw* (13 *J. R.* 26) a rule of reference was entered by consent in an action of assumpsit, but the trial did not require the examination of a long account. The cause was tried, a report made and sued upon as an award. The court held the reference regular. The court say the consent of the parties to a reference concluded them from objecting that the action was not referable. It being assumpsit, it may have involved long accounts. The reference was an admission that the case was within the statute, and the court would not listen to an objection to the contrary.

Proceedings upon a reference, is a waiver of all objections because of irregularities. (*Garcie* agt. *Sheldon,* 3 *Barb.* 232). In *Bonner* agt. *McPhail* (31 *Barb.* 106) the action was slander for words spoken in reference to the evidence of a plaintiff in an action tried before a referee. No order of reference had been entered, and was not until some two months after trial, when one was entered *nunc pro tunc.*

It was held by the general term in the second district, that the referee had no power to administer oaths. But that the omission to obtain the order of reference before the referee proceeded to hear the cause, was an irregularity which the parties might waive or correct so as to give effect to the report.

In *Comstock* agt. *Olmstead* (6 *How. Pr. R.* 77) Judge GRID-LEY decided that when a claim was presented against an estate and rejected, and an agreement to refer entered into, but it was never filed nor rule entered, that the court did not come possessed of the cause, and he cites in support of the position *Robert* agt. *Ditmas* (7 *Wend.* 525) in which

·SAVAGE, Ch. J. says there must be an agreement in writing filed as the foundation of the rule to refer, there must be a report and the report must be confirmed. It will be seen, by reference to the opinion of the chief justice that he was not speaking, nor was he called to speak, as to whether compliance with each of these requirements was essential to give validity to the report. He spoke of them as he would of the service of process, joining issue and serving notice of trial as necessary to a judgment.

But while the general rule is that each step is necessary, yet it does not follow but that some of them may be waived.

I can perceive no more necessity for an agreement in writing and rule of reference in the class of cases under consideration than under section 270 of the Code, already referred to. If they may be dispensed with in the one case, so may they in the other.

The appearance before the referees, the trial of the claim presented and report thereon, are all that are necessary to justify the entry of a judgment. All the preliminary steps may be supplied *nunc pro tunc*. (1 *Wend.* 314.)

I think the order should be reversed and the appeal, &c., restored.