## TERPENING V. HOLTON.

1. Good practice requires that an order of reference should state whether it was made on the agreement of parties, upon the application of one party, or on the motion of the court.

2. In an action in which the circumstances authorizing a compulsory reference under the Code of Civil Procedure do not exist, where the order fails to show that the reference was by consent, and it appears from the transcript that the appellant did not object to the validity of the order or the jurisdiction of the referee, either before the referee, or in court before the entry of judgment upon his report, and that he appeared before the referee, and proceeded to the trial of the matters submitted, the appellant's conduct will operate as a waiver of his right to object, and the reference will be upheld on appeal.

3. Where a reference covers the whole issue before the court, the clerk may enter judgment upon his report without any order of the court; and previous to the act of April 10, 1885, no notice was required before doing so.

4. Evidence of the contents of a deed is not admissible until the fact of its loss has been established.

5. Where the proof already offered has revealed that the sale of a mining claim relied upon was evidenced by a written instrument, the party relying upon the sale must produce the writing, or account for its absence, and evidence of a parol sale is not admissible.

6. That part of section 192 of the Code of Civil Procedure authorizing the clerk to enter judgment upon a referee's report is not, as an attempt to make the finding of the referee the finding of the court without its submission to the court, a violation of article 6, section 1, of the state constitution relative to the judicial power.

*Appeal from District Court of Ouray County.*

THE relief sought by the complaint was to quiet title to a mining claim. The defendant Holton was alleged to be one of the original discoverers, and to have been possessed of an undivided one-half interest therein. The plaintiff, who is appellant here, alleges a sale and conveyance by Holton of his interest to one Morgan, and a conveyance by Morgan to the plaintiff. The complaint further states that the deed from Holton to Morgan was transmitted for record, and lost *in transitu.* Holton's answer denies the sale, the execution and existence of the deed, and the fact of its loss. The cause was referred to a referee for trial of the issues, and the testimony was closed without proof of the loss of the deed. The remaining facts are stated in the opinion.

Mr. CALDWELL YEAMAN, for appellant.

Mr. CHAS. H. TOLL, for appellee. .

BECK, C. J. The first error assigned, and the first proposition discussed, by counsel for appellant, is that the court erred in referring this cause to a referee. Counsel assumes that the reference was made by the court on its own motion, and that it was made in violation of the statute, since the circumstances which authorized a compulsory reference under the Code of Civil Procedure did not exist. No long account was to be examined on either side; the taking of an account was not necessary for the information of the court; no question of fact arose, otherwise than upon the pleadings; and the action was not of the character denominated a special proceeding. Code, § 186. Whether the order, therefore,

be construed as directing the referee to try the issues and report a judgment, or to report a finding of facts which would have the effect of a special verdict, viewed as a compulsory order, it was issued without lawful authority for either purpose; and in such case a valid judgment could not be rendered or entered upon the report. *Bonner v. McPhail*, 31 Barb. 106, 116; *Scudder v. Snow*, 29 How. Pr. 95.

But in support of the judgment it is argued, as a legal inference arising upon the record, that the order of reference was not compulsory, but it was made upon consent of the parties litigant. In support of this proposition we are referred to the fact, appearing of record, that both parties appeared before the referee and submitted their testimony on the issues presented by the pleadings, without raising any objection as to the regularity of the appointment of the referee or the validity of the order of reference. As a question of practice, the order should state whether it was made on the agreement of the parties, upon the application of one party or on the motion of the court; but a failure to preserve in the record proper, as is the case here, the circumstances and manner under which the order was made, while amounting to an irregularity, does not, according to the current of authority, afford grounds of reversal on appeal, where both parties, without objection or exception in this behalf, appear before the referee and submit to a trial upon the merits. It is true that the power of referring causes to a referee for trial is a statutory power, and, in order to invest the referee with jurisdiction, must be exercised in the manner provided by the statute. When so exercised, the referee is vested with jurisdiction to act for both judge and jury in the trial of legal actions, and to act for and in place of the court in the trial of equitable actions. If the court assume, of its own motion, to refer for trial to a referee a cause requiring the consent of the parties, no obligation is thereby imposed upon either

party to observe the order or to attend before the referee, and the rights of a party who declines to attend are not prejudiced. In such a case the jurisdiction of the referee must affirmatively appear.

The principle involved is analogous to acquiring jurisdiction of a party by service of process. But in such a case, if the record be silent as to consent, the subsequent conduct of the parties may supply evidence tending to show that they in fact consented to the reference. As appearing to the action without objection when not served with process will waive the right to raise that objection afterwards, so appearing before a referee, and tacitly consenting to his jurisdiction over the subject-matter and of the parties, will waive the right to question his jurisdiction after judgment, on the ground above mentioned. Wells, Jur. 51, 74. See, also, as to irregular references, *Bucklin v. Chapin,* 35 How. Pr. 155.

In the present case there is nothing in the record before us showing whether the consent of the parties was obtained before the reference was ordered or not. The order of reference is silent upon the point, and the transcript does not purport to give all the record entries, nor does it purport to contain copies of all papers filed in the case, but those only which are mentioned in appellant's *præcipe.* Upon this record we cannot say that the court, of its own motion, referred the issues to a referee for trial, and that it did not act upon the consent of the litigants in making the order. For anything appearing in the record, or stated in the clerk's certificate attached thereto, the reference may have been ordered, in the language of section 185, "upon the agreement of the parties filed with the clerk."

The following conduct and acts of the appellant tend strongly to indicate that he consented to the order of reference: He appeared before the referee in person and by attorney, without objection, and submitted the proofs of his claim for relief. He excepted to the rulings of

the referee which were unfavorable to him, including his report and his findings of fact and conclusions of law. After the report was filed in the district court appellant filed specific exceptions thereto, and he afterwards filed a motion to set aside the report, setting out in detail the reasons why it should be set aside. This motion, and the exceptions mentioned, were overruled by the court, when the appellant filed a motion to vacate the judgment, assigning several grounds of error; but in all the exceptions reserved to the rulings and findings of the referee, and in all the grounds assigned in support of the application to set aside the referee's report, and to vacate the judgment, not a single objection was raised to the validity of the order of reference, or to the jurisdiction of the referee. It is well settled that a party may waive a constitutional or statutory right existing in his favor; and we must hold that the conduct of the appellant in this case, and his failure to question the jurisdiction of the referee in the court below, must operate as a waiver of such questions on appeal from the judgment. The presumptions of law are in favor of the regularity of the proceedings of the district court.

The second proposition laid down and discussed by counsel for appellant is: "The referee should have made his report to the court in obedience to the order, and the court should have affirmed it and ordered judgment to be entered, the clerk having no authority to enter judgment on the referee's report for the reason that the referee was not authorized to enter judgment by order of reference, but simply to report to the court." If this proposition be correct, then the second and third grounds of error are well assigned, viz.: *Second*, the court below erred in overruling the plaintiff's motion to set aside the report of the referee; *third*, the court below erred in overruling plaintiff's motion to vacate the judgment, and for a new trial.

The mode of procedure indicated in the second proposition would be a good rule of practice in all cases where

the rulings and decisions of a referee are objected to and
exceptions to the report and findings filed, as contem-
plated by section 190.   The rule would include the case
at bar, since the rulings and decisions of the referee were
objected to on the hearing, and no opportunity was af-
forded, as the statute then stood, to file exceptions to the
report and findings prior to the entry of judgment.   But
it does not necessarily follow that a different mode of
procedure would invalidate the judgment.   In the ab-
sence of statutory provisions or rules of court to the con-
trary, the current of authority is to the effect that, under
similar code provisions, a confirmation of the report is
not requisite to the authority of the clerk to enter up
judgment.

Section 272 of the New York code, as amended in 1857,
provided that "the trial by referees shall be conducted in
the same manner and on similar notice as a trial by the
court.   *   *   *   They must state the facts found and the
conclusions of law separately, and their decision must be
given and may be excepted to and reviewed in like man-
ner, but not otherwise, and they may, in like manner,
settle a case or exceptions.   The report of the referees
upon the whole issue shall stand as a decision of the court,
and judgment may be entered thereon in the same man-
ner as if the action had been tried by the court.   When
the reference is to report facts, the report shall have the
effect of a special verdict."   Under this section the New
York courts held, prior to an amendment of the act in
1870, that the report of the referee was to be filed like a
decision of a judge, and that it was the duty of the clerk
to enter up judgment thereon at once; that, as a rule, the
report did not require confirmation, except where it was
intended to be the foundation of a future discretionary
act of the court.   It was also held to be no ground for
vacating a judgment that it was entered without leave of
the court and without notice.   *Heinemann v. Waterbury*,
5 Bosw. 686; *Griffing v. Slate*, 5 How. Pr. 205; *Bouton*

*v. Bouton*, 42 How. Pr. 11; *Currie v. Cowles*, 7 Rob. (N. Y.) 3.

In California, under a similar code provision, it was held that a report of a referee upon the whole issue stands as the decision of the court, and that upon filing the record the clerk enters judgment thereon as of course. *Sloan v. Smith*, 3 Cal. 406; *Peabody v. Phelps*, 9 Cal. 224.

Was the referee authorized to render judgment by the order of reference? It may be conceded that the order of reference was informal, but we think it must be construed as referring to the referee, for trial, all the issues in the action, whether of fact or of law, as contemplated by the first subdivision of section 187, being now section 185. It was so construed by the referee, by the parties, and by the court below. The referee tried the issues raised by the pleadings, determined the rights of the parties, and then, in conformity with the order of reference and with the statutes, reported to the court his findings of fact and conclusions of law; also the testimony taken, and objections thereto. No objections were raised or exceptions reserved, in the court below, to the validity of the reference, or to the jurisdiction of the referee to try the issues; and the order of reference being, in our judgment, broad enough to cover the action taken under it, the authority of the referee must be sustained. It follows, therefore, that the objection to the clerk's authority to enter up the judgment on the report filed is groundless.

Respecting the complaint that the judgment was entered immediately upon the filing of the report, and without previous notice to the appellant, it is to be observed that, as the law then stood, notice was not required. The entry of judgment, however, did not deprive appellant of any substantial objections which he may have reserved to the proceedings. Objections could have been and were presented on a motion to vacate the judgment and

for new trial. This is the doctrine of the authorities to which we have referred.

As regards the several objections raised in behalf of the appellant in the court below, we have examined them, and find none of them to be of a substantial character.

In respect to the exclusion of parol proof of the contents of the deed alleged to have been executed by defendant Holton to Morgan, the appellant's grantor, the ruling is sustained by well-settled principles of law. One of the modes of acquiring title to mining claims is by deed from the owner, which is the mode stated in the complaint whereby the appellant acquired the title in controversy. It is further stated therein that Morgan acquired his title by deed from Holton, who was one of the original locators, and that this deed was lost while being transmitted for record. The answer denies the sale to Morgan, and that such a deed as that alleged to have been lost was executed, or ever existed. Appellant having introduced witnesses who testified that such deed was executed and delivered, evidence of its contents was not admissible until the fact of its loss had been first established. *Bruns v. Clase, ante,* p. 225.

Appellant also offered to prove a parol sale of the claim by Holton to Morgan, and his counsel now cites us to the doctrine laid down in *Patterson v. Keystone M. Co.* 30 Cal. 360, holding that, where a written conveyance of a mining claim is pleaded, a verbal conveyance may be proven. This case, however, proves too much, since it holds that, if the sale be in writing, it must be proven by producing the writing, or by proof of its contents, after first establishing the fact of its loss.

As to the motion made by the appellant, on the next day after the closing of the testimony, for leave to amend the pleadings to conform to the proof, we perceive no abuse of discretion in the denial thereof. This motion, which was in writing, did not state what amendments

appellant desired to make in the pleadings. If he proposed to strike out the averment of the written sale, and to substitute therefor an averment of a parol sale, the amendment would have availed him nothing under the authority cited. Appellant had already proven by witnesses that the sale relied upon was evidenced by a written instrument, and the rule which requires the production of the best evidence would have required him to produce the writing, or to account for its absence. He failed to do either on the trial. Leaving out of view, therefore, the testimony of the appellee, which was to the effect that no sale, either written or parol, was ever made to Morgan, the character of the appellant's testimony would not have entitled him to recover by a mere amendment to the pleadings.

Appellant's third proposition is: "If section 192 of the code attempts to make the finding of the referee the finding of the court, without its submission to the court, and authorizes the clerk to enter judgment on such finding without its being first submitted to the court, such part of the section is unconstitutional."

The constitutional provision supposed to be violated is section 1 of article 6: "The judicial power of the state, as to matters of law and equity, except in this constitution otherwise provided, shall be vested in a supreme court, district courts, county courts, justices of the peace, and such other courts as may be created by law for cities and incorporated towns."

This is a usual provision of state constitutions, and has not been held to interfere with statutory regulations prescribing the mode, manner and time for the performance of judicial acts, and the entry of judgments. When a statute authorizes proceedings to be prosecuted to final judgment upon consent of parties in a mode which, but for such consent, would be liable to constitutional objections,— as the trial of the issues before a referee,— the consent of the parties operates as a waiver of objec-

tions.   The same principle was invoked, before the adop-
tion of the code, to sustain summary proceedings.   Thus,
in a judgment by confession, the entire proceedings, from
the filing of the complaint to the entry of judgment,
might occur in vacation, if the statute so provided.   So
of the proceeding by arbitration, wherein the parties liti-
gant consent to submit their differences to certain per-
sons not in judicial authority, whose adjudication shall
be filed in court, and judgment entered thereon.   Anala-
gous in principle to the foregoing examples is that of
judgment by default.   In this instance no express con-
sent is given.   The court acquires jurisdiction of the
subject-matter, and of the person of the defendant, by
the filing of the declaration or complaint, and by the
service of its process.   Ample time and opportunity be-
ing afforded the defendant to appear and interpose a
defense to the action, his neglect to do so was construed
as a waiver of his rights, and as an implied consent to
the entry of judgment.

The decisions of this court, to which we are referred
by counsel, holding that valid judgments could not be
entered in vacation, are based upon the absence of stat-
utory authority; all having occurred prior to the adop-
tion of the Civil Code.   The doctrine of these cases is
that consent alone, in the absence of statutory authority,
will not confer jurisdiction.   Thus, in *Filley v. Cody*, 4
Colo. 110, wherein the parties had stipulated that the
motion for a new trial should be heard and determined
in vacation, and, if denied, judgment should be rendered
as of the trial term, the court held, on principle and on
the authority of *Cooper v. American Ins. Co.* 3 Colo.
318, that, in the absence of statutory authority, a judg-
ment rendered in vacation was void.   In *Kirtley v.
Marshall Silver Min. Co.* 4 Colo. 111, a demurrer to the
bill was, by stipulation of the parties, heard and decided
in vacation; and, the demurrer being sustained, a decree
was entered up dismissing the bill.   The court say: "This

was error. In vacation, under the old system of practice, the judge had no authority to render the decree. The court alone had power to hear and determine the issue raised by the demurrer. To hold that the decree is valid would be to assert that parties may confer jurisdiction by consent, which cannot be admitted." Other cases are to the same effect.

But the present case arises under a different system of practice,— a system which provides statutory authority for the acts performed. And, in addition to such authority, the proceedings here were sanctioned by the consent of the parties. It is a feature of the code system that much judicial work may be performed in vacation; and, if we were compelled to rule in this case in the manner insisted upon by appellant's counsel, it would seriously embarrass the courts in their practice under this system. The code authorizes the entry of judgments, in certain cases, without the actual presence of either the court or judge. It is true, as shown by Chief Justice Dixon in *Wells v. Morton*, 10 Wis. 423, that this has always been done; but it was done covertly, and cloaked over by a fiction whereby it appeared as if it had been done at the preceding term.

The opinion of this court in *Phelan v. Ganebin*, 5 Colo. 14, contrasted with the prior decisions referred to, illustrates the effect of statutory regulations upon the course of judicial proceedings. Section 150 of the code, as originally enacted, authorized judgments to be entered up by the clerk in vacation, in the cases therein specified, on failure of the defendants to appear and demur or answer. The opinion adverts to the fact that the courts of many of the states have acted under similar statutory provisions for many years, and that the validity of the judgments so entered have been upheld by the decisions of the highest courts of the code states. The learned justice further says that the theory upon which judgments in such cases are founded is that the judgment is the sen-

tence which the law pronounces as the sequence of statutory conditions; that the statute directs the judgment; and that the clerk acts as the agent of the statute in entering it upon the records of the court.

In the present case the issues were referred to a referee for trial, by consent. He was ordered to report his findings and conclusions in vacation. The statute required the clerk to enter judgment thereon, upon the filing of the report. This, however, did not operate to deprive appellant of his right to have all the proceedings fully reviewed by the court. *Hattenback v. Hoskins*, 12 Iowa, 109; *Roberts v. Cass*, 27 Iowa, 225.

These views do not conflict with those announced in *Haverly I. M. Co. v. Howcutt*, 6 Colo. 574, wherein it was held that a judge of a court cannot, even by consent of parties, vacate his seat upon the bench, and authorize a member of the bar to administer the judicial office in the trial of a cause. In one case the testimony is reported to the court, together with the rulings of the referee and exceptions thereto, while the court, retaining its jurisdiction over the cause, may reverse such rulings and findings, and render a wholly different judgment from that reported by the referee; but in the other case the powers of the court itself would be usurped by a citizen who has not been chosen to the judicial office in the manner provided by the constitution, and who may not possess the constitutional qualifications therefor. In one case the court maintains its constitutional organization, and its jurisdiction over the cause as well, while in the other the proceeding would be outside of any legally constituted authority.

Being of opinion that no substantial errors have intervened, the judgment will be affirmed.

*Affirmed.*