Thomson, P. J.
John Hardenburg brought this suit against J. W. Hugus & Company, alleging the unlawful and wrongful taking by the defendants from the plaintiff of certain property belonging to him, to his damage in the sum of $6,000. The answer denied the allegations of the complaint, and alleged that by virtue of an execution issued out of the court of J. W. Sendelbach, a justice of the peace, against The West Side Mining Association, on a judgment theretofore rendered by the justice, the property of the association was levied upon and a portion of it sold to the defendants; that before the issuance of the execution the agent of the association, and the plaintiff who was acting as its foreman, entered into a conspiracy to cheat and defraud the association and its creditors, pursuant to which the agent pretended to sell all of the property of the association to Hardenburg; that only a portion of the property came into the possession of the defendants by virtue of the sale under the execution; that the property claimed by the plaintiff was mortgaged by the association to one Green, who assigned the mortgage to one Prentice; that the mortgage was still in full force, and that the plaintiff knew of its existence. The replication denied all of the averments of the answer. The cause was submitted to a jury of six, who rendered a verdict signed by five of their number, assessing the *466 plaintiff’s damages at $1,671.82. There was judgment ¿ccordingly, and the defendants have brought the cause here by writ of error.
As appears by the evidence, The West Side Mining Association, a corporation, was engaged in' placer mining at Dry Gfulch in Routt county. The property in question had been purchased and was owned by it. This property consisted of an amalgamator, mining machinery, a quantity of. steel piping used to bring water to the ground, and some other articles. The general manager of the association was one W. B. Haskins, and plaintiff was in its employ. In September or October, 1897, the association found that its mining operations were a failure, and Haskins went to Providence, Rhode Island, the headquarters of the association, to consult with its executive committee with reference to the situation. This committee consisted of three men who’ had the entire management of the association’s business.. Haskins recommended the abandonment of the business, and the sale of its property. It owed debts amounting to some thousands of dollars. The result of the consultation was that the committee directed Haskins to return to Dry Gfulch and make such disposition of the business and property as he might think best. On his return in October, 1897, he transferred the property to the plaintiff, to whom the association owed $1,100, in consideration of the satisfaction by him of his own claim, and his agreement to pay the other debts of the association, except one to the defendants, of $223.74 for goods sold. The reason why this was not included, was that Haskins disputed the bill, asserting that among the articles bought from the defendant was a quantity of damaged meats which had to be thrown away, and saying that the association would adjust and settle this bill itself. This Haskins afterwards attempted to *467 •do, but was unable to reach an agreement with the defendants. In behalf of his principal, Haskins executed a bill of sale of the property to the plaintiff. After concluding the transaction with the plaintiff, Haskins returned to Providence to report what he had done. In the meantime the association discovering some defect in its incorporation, had re-incorporated under the laws of Wyoming as The Pilgrim Hold Mining Company, and the report was made to the executive board of that company, who approved the transaction.
Hardenburg then proceeded to dispose of the property and pay the debts. Part of these were paid from the proceeds of the sales and part from the plaintiff’s own money. At the time the property was taken from him, he had paid them all except $125.
On the 10th day of October, 1898, J. W. Hugus & Company, the present defendants, commenced a suit before J. W. Sendelbach, a justice of the peace, against W. B. Haskins, to recover $223.74. The summons described the defendant in the suit as “the agent for The West Side Mining Association.” The summons was returned not. found, and an affidavit for attachment was made by II. S. Elias, as agent of J. W. Hugus & Company. A writ of attachment was issued in virtue of which the constable to whom the writ was directed, as appears by his return, levied upon and seized a large portion of the property, including the property in question in this case. In seizing the property, as appears from the evidence, he acted under the immediate supervision and direction of J. W. Hugus & Company. It does not appear from the abstract that any judgment was ever rendered in the cause. It is stated generally that the constable sold the property by virtue of an order of sale; but the order is not before us, and we are ignorant of its purport.
*468 At the trial of this cause, after the jury had been instructed and had remained out for a considerable time, the trial judge recalled them and gave them the following instruction: ‘£ Gentlemen: After you left the court-room my attention was called to the fact that the statute has been changed concerning the number required to find a verdict. It will require three-fourths of your number to find a verdict; it does not require a unanimous verdict; and unless you all agree upon a verdict, those that do agree must sign the verdict,. sign their names to the verdict; but if you all do agree, then no ‘one needs to sign it except the foreman.”
This instruction has been brought here by a supplemental bill of exceptions. Concerning the occasion for giving the instruction, the following is all that the abstract of the record, prepared in behalf of the defendants, contains:
“By supplemental bill of exceptions, folios 2 and 3, it is certified by Judge Rucker, the trial judge of this case, that after the jury had retired and had been out all night, in the morning W. B. McClelland, attorney for defendant, J. W. Hugus & Company, suggested to the court that the three-fourths jury law would apply to this case, and asked that such instruction be given; whereupon the court called for the files, and then reproved counsel for not calling its attention to the law before; whereupon both counsel for plaintiff and defendant apologized to the court for not having done so; thereupon the jury were recalled and the court instructed. them orally as above; to .which instruction no objection was made or exception taken by either party. ’ ’
As we have said, the verdict was signed by five of the jurors.
Tn this court, for the first time, that.instruction is assailed; and it is vigorously argued that the ver *469 diet was void, and conld not be the basis of a judgment. The following is the law wbicb tbe court followed in giving tbe instruction:
“That hereafter, in all civil cases in courts of record which shall be tried by a jury, not less than three-fourths of the number of jurors sitting in such case may concur in and return a verdict therein, and such verdict shall have the same force and effect as though found and returned by all of the jurors sitting in said case. ’ ’ — Session Laws 1899, p. 244.
Our attention is directed to the cas.e of City of Denver v. Hyatt, 28 Colo. 129, in which our supreme court held that law to be unconstitutional. In that case the court passed only upon the abstract question of the constitutionality of the law. The question whether, notwithstanding its unconstitutionality, or, in the absence of any law on the subject, a party might not by his conduct preclude himself from questioning the validity of such a verdict, was not before the court. In this case the instruction was given upon the suggestion and at the request of the defendants. It was not mentioned in the motion for a new trial, nor does it appear in the original transcript of the record filed in this court by the defendants, and no error is assigned upon it.
Parties may elect to have their controversy determined without a jury; and it would be somewhat anomalous if, having a jury, they might not agree to accept the decision of three-fourths, or even a less number, of the jurors, as sufficient. Whatever may be the rule in criminal proceedings, in the conduct of civil causes, parties are usually held bound by their stipulations. And that a party might, in an appellate tribunal, avail himself of an error committed by the trial court at his own instigation, would be contrary to our understanding of the law, and not in harmony *470 •with our conceptions of justice. It has frequently been held in this state, and elsewhere, that in the trial of a civil cause, a party may waive either a constitutional or a statutory right: — Tarpening v. Holton, 9 Colo. 306; Butler v. Rockwell, 17 Colo. 290; Corthell v. Mead, 19 Colo. 386; Bates v. Ball, 72 Ill. 108; Dowd v. Thomas, 69 Mo. 364; Shutte v. Thompson, 15 Wall. 151.
In Ralston v. Oursler, 12 Ohio St. 105, it was held that a party, having availed himself of a statutory remedy, must be regarded as having elected to take that particular remedy, and could not complain of its infringement of his constitutional rights. The doctrine is announced in Vose v. Cockcroft, 44 N. Y. 415, that a party may, by his conduct, estop himself to deny the constitutionality of a law. To.' Northern Bank v. Buford, Duvall, (Ky.) 335, the jury not being able to concur in their verdict, the parties agreed that the verdict of the majority of the jury should be made the judgment of the court. The agreement was held good, and the verdict sustained.
Complaint is made of certain instructions given at the request of the plaintiff. We have looked over' the instructions and are unable to detect any serious error. Whatever defects may be found in the instructions given for the plaintiff, were, we think, fully supplied by those given for the defendants, which seem to be very comprehensive and complete. But, as we shall see hereafter, the character of the instructions, except as to the measure of damages, is not a matter of much importance.
It is contended that the evidence did not show such delivery of possession to the plaintiff by his vendor as to satisfy the requirements of the statute of frauds. It is provided by that statute that every sale made by a vendor of goods and chattels in his possession or under his control, unless the same be *471 accompanied by an immediate delivery and by an actual and continued change of possession, shall be presumed to be fraudulent and void as against creditors of the vendor, or subsequent purchasers in good faith, and such presumption shall be conclusive.— Mills’ Ann. Stats., sec. 2027.
What acts are necessary to constitute delivery is dependent upon the nature and situation of the property. “Where the subject of the sale does not reasonably admit of an actual delivery, it is sufficient if the vendee assume the control and dominion of the property so as. to indicate to all concerned the change of ownership.” — Cook v. Mann, 6 Colo. 21.
The property in question, from its character and situation, was incapable of manual delivery. It consisted of very heavy articles. Some of the pipe was in place, and some lying scattered upon the ground, and the possession seems to have been taken in the only feasible way. The plaintiff immediately commenced the sale of the property in his own behalf, and continued its disposition until interrupted by the attachment. His vendor never after the sale asserted any dominion o.ver it. But, conceding that the sufficiency of the delivery and change of possession might be open to question, it cannot be questioned by these defendants. As between the vendor and the vendee the transaction was valid. It bound them both. The only persons having the legal right to say it was void, were creditors of the vendor, or subsequent purchasers in good faith. To subject property of his debtor to the payment of his claim, a creditor must proceed lawfully. He cannot seize and sell his debtor’s property except by the aid of legal process sued out against the debtor. If he proceed otherwise, he is a trespasser. The claim in this case was against The West Side Placer Mining Association. The suit brought by the defendants was against W. B. Has- *472 Mus. That Haskins was described as tbe agent of tbe association is immaterial. He was the defendant, and tbe proceeding was against him. And even in tbe suit as brought, no judgment was shown. Tbe attempt to.justify tbe seizure and sale under that proceeding is idle. Tbe taking was unlawful, and tbe fact that the defendants held a claim against tbe association does not change tbe character of tbe act. Not having asserted their claim by a proper proceeding, they were not creditors within tbe meaning of tbe statute.
It is further contended that tbe damages were excessive. "We do not so read the evidence as it appears in tbe abstract. It seems to us that the proofs would have warranted even a larger amount. But excessive damage was not alleged in tbe motion for a new trial. The question was not in any way presented to tbe trial court. The point is made for tbe first time 'here. This is an appellate tribunal, and sits for tbe correction of errors committed below. Tbe trial court made no ruling on the question whether tbe damages were excessive, for tbe reason that it was not asked to do so. Twenty-three grounds were alleged in tbe motion for a new trial, but this was not one'of them. No error was therefore committed in relation to the amount found by tbe jury. The following is from tbe opinion in Jones v. Jones, 71 Ill. 562:
‘ ‘ On tbe motion for a new trial in tbe court below, there was no objection urged that tbe damages were excessive. That was not stated as a ground for setting aside tbe verdict. Tbe court below, not being asked to do so, had the right to suppose that tbe appellant, acquiesced in tbe amount of tbe finding, but relied 'on tbe ground specified, alone, for a new trial. To avail of such an objection, the party should in some way, either by general or specific objection, *473 make that a ground for granting a new trial, and, if disallowed, then it should be assigned as error in tbe appellate court.”
See also Elliott’s Appellate Procedure, § 855.
Some other .questions are discussed which might be deserving of attention if raised by a party entitled to their consideration; but the status of the defendants, as fixed by the evidence, renders them unimportant. Except as to the amount of damage, there was no question for the jury to determine, and that question- appears to have been properly submitted.
Upon a careful examination of the record, as the defendants have abstracted it for us, we do not feel at liberty to disturb the judgment, and it will be affirmed. Affirmed.